## 9111

### CLARK v. NEW YORK LIFE INS. CO.

#### (85 S. E. 594.)

LIFE INSURANCE.  CHANGE IN METHOD OF PAYING PREMIUMS.  EXTENDED INSURANCE.

Where a policy of life insurance, providing for annual payments of premium, further provided that upon failure to pay any premium when due, if there should be no indebtedness to the company, the insurance would automatically continue as term insurance from the date to which premiums were paid for the term stated in a table printed on the policy, based upon the number of annual payments paid; an agreement changing the method of paying premium, from annual to quarterly payments, entitles the insured to extended insurance in proportion to the quarterly premiums paid by him.

Before DeVore, J., Lancaster, March, 1914. Affirmed.

Action by S. Joyce Clark against New York Life Insurance Company. From judgment for plaintiff, defendant appeals.

The facts are stated in the Circuit decree, which was as follows:

"These two cases are identical. They are brought by the plaintiff on insurance policies numbers 3238433 and 3234947, issued by the New York Life Insurance Company to Adolphus J. Clark, on the 14th day of January, 1902, and the provisions of the policies 'relate back to that time.' The beneficiary is S. Joyce Clark, the daughter of the insured. Jury trial was waived; both cases being referred to W. P. Robinson, Esq., as special referee, to take the testimony only. Testimony was taken by him, and both cases were heard by me at the same time at the March, 1914, term of this Court.

The admitted facts of both cases, and those about which no contention is made, are the execution and delivery of the policies and the payments of premiums thereon to July 14th, 1907, and that Adolphus J. Clark, the insured, died at Lancaster on December 5th, 1912. Further, that the original agreements as to the payment of the premiums on the policies was that the premium of $46.46 was to be paid annually, and that the first annual premium was paid on January 14, 1902, for the insurance year from January 14, 1902, to January 14, 1903.

Subsequently, that is to say, on 'February 18th, 1903, an 'Agreement for Change of Payment of Premiums' was made by and between the New York Life Insurance Company, the defendant, A. J. Clark, the insured, and S. Joyce Clark, the beneficiary.

This agreement was that the premiums on both of said policies 'shall be payable in equal quarterly installments of

$12.31 each, on the fourteenth day of January, April, July and October, instead of annually on January 14th, as provided in said policy.' This agreement was:

'Second. That all of the conditions of said policy as to the payment or nonpayment of any premium shall apply to any installment payable under the preceding agreement.'

'Third. That any unpaid installments of any insurance year's premium shall be an indebtedness to be deducted in any settlement of said policy.'

'Fourth. That all of the conditions of said policy, except as herein modified, remain in full force.'

The contest in both cases is admitted to be under, and the result dependent upon, that clause of the policies providing for 'continued insurance.' That clause is as follows:

'First. If any premium of interest is not paid on the date when due, and *if there is no indebtedness to* the company, the insurance will automatically continue as term insurance from the date to which premiums were paid, for the amount stated at the head of column 3 of the table on the second page thereof, for the term specified therein, and no longer.' By referring to column 3 therein designated, we find a table or scale fixing the periods for which the insurance will continue after the failure of the insured to pay the premiums due on the policies.

The periods fixed by this table are predicated upon the payment by the insured of full annual premiums; that being the manner of the payment of the premiums fixed by the original agreement of the parties. The scale, or table, shows that under the original agreement, that is, the payment of annual premiums, that the insurance referred to in table 3 was extended or continued by the year. Therefore, if no subsequent agreement had been entered into between the parties, and the payment of the premiums had been continued annually, the insurance could only have been continued or extended by the year as provided at that time because that was the agreement of the parties.

The vital question is—to what extent, and in what manner, were the terms of the original policies modified by the agreement of February 18th, 1903? It is admitted that the insured, Clark, paid all premiums due on both policies up to July 14th, 1907. That is, he paid the full insurance year's premiums for the following years: January 14th, 1902, to January 14th, 1903, in one premium, then on and through each full insurance year up to January 14th, 1907, he paid the premiums by the quarter—five full years—and that he also paid the quarterly premiums of $12.31 due on each policy on the 14th of January and April, 1907, thus paying for six months additional insurance in 1907, thereby paying all premiums due to July 14th, 1907, thus making five years and six months full insurance paid. It being admitted that all insurance premiums due were paid up to July 14th, 1907, the rights of the parties became fixed at that time. Now what were those rights? What were they under the original policies, and wherein have they been modified or enlarged by the agreement of February 18th, 1903? The plaintiff contends that the insurance must be continued by the quarter of a year in order that the benefit of the policies may conform to the new method of paying the premiums by the quarter instead of by the year agreed to by all of the parties; and that the method of computing the continued insurance by the quarter is simple, it only being necessary to divide the increased continued insurance fixed for any one year by the quarter to ascertain how much continued insurance is purchasable by the payment of one quarter's premium; and that the second and fourth clauses of the February 18th, 1903, agreement extend all of the conditions and benefits of the policies by the quarter instead of by the year.

The defendant's contention is twofold: First, that continued insurance can only be computed by the year, as fixed in the table referred to, notwithstanding the new agreement of February 18th, 1903; and, second, that the two quarterly

premiums due on July 14th and October 14th, 1907, for the remainder of the premiums due on the insurance year, ending January 14th, 1908, should be considered and adjudged a debt against the insured which would deprive him of the continued insurance under the third clause of the agreement of February 18th, 1903. A. J. Clark, the insured, died on December 5th, 1912; his death, therefore, occurred five years, four months and twenty-one days after the lapse of the policies on July 14th, 1907. That is, this length of time elapsed from July 14th, 1907, the date to which it is admitted that premiums were paid on the policies, to December 5th, 1912, the date of Clark's death. It is clear, therefore, that more than five years and three months—the period mentioned in the table of continued insurance—from January 14th, 1907, the date to which full annual premiums were paid, had elapsed before Mr. Clark's death, and it is equally clear that the policies were utterly lapsed at his death if defendant's contention is to be accepted, and if no charge for continued insurance is to be considered for the full six months additional insurance for which Mr. Clark paid. In other words, if the insured is to get no benefit of the continued insurance sold him under the original agreement in the policies before the new agreement was entered into, for the six months premium paid by him under the new agreement, then he was not insured at the date of his death. To so hold would be permitting the defendant to accept, and retain, premiums for six full months on the policies for which it gives the insured nothing, unless there are other conditions in the policies which deprived Clark of the continued insurance. There is no contention as to the construction of the policies as they were originally issued, except, perhaps, as to what should be considered such an indebtedness against the insured as would deprive him of continued insurance. It is clear that if no subsequent agreement as to the payment of the premiums had been made, and the original annual payment plan had been

adhered to, that all benefits of continued insurance would have been predicated upon the payment of annual premiums, and only continued or extended by the year. But a subsequent agreement was made stipulating that premiums should be paid quarterly instead of annually, and this agreement provides:

'Second. That all of the conditions of said policy as to the payment or nonpayment of any premiums shall apply to any installment payable under the preceding agreement.'

'Fourth. That all conditions of said policy, except as herein modified, remain in full force.'

What does this language mean? What construction would the ordinary mind put upon it? There is no intimation to be gleaned from it that the defendant meant to say that the insured should be deprived of any of the benefits or conditions of his policies; on the contrary, it is specifically stated 'that all of the conditions of the policy, except as herein modified, remain in full force.' The conditions of the policies were that if the insured paid a full year's premium he should have the benefit of a full year's continued insurance as fixed by the table. The new agreement is that all of the conditions of the policies remain in full force; only the times of paying the premiums is changed. Now if the insured was entitled to a certain period of continued insurance if he had paid a full year's premium, why should he not be entitled to the proportionate part of that period if he had paid a proportionate part of the premium? The second clause of the agreement unequivocally states that all of the conditions of said policies as to the payment or nonpayment of any premium shall apply to any installment. The defendant admits that the payment of a full year's premium entitles the insured to continued insurance for the periods stated in the table; the new agreement extends the same benefits and conditions to the payment of any installment on a year's premium, therefore, it is clear that the agreement of February 18th, 1903, can only be

construed as extending by the quarter all of the benefits of the policies that had originally been extended by the year. To hold to the contrary would clearly be against the proper and unambiguous meaning of the language used. Again, the fourth paragraph provides, 'That all of the conditions of said policy, except as herein modified, remain in full force.' This reaffirms all of the conditions of the policy, except as therein modified. The modification was only as to the times of the payments of the premiums, and this, of a necessity, modified and conformed thereto all conditions and benefits of the policies predicated upon the time of the payments. Nor is there any difficulty in the application of the modified methods of paying the premiums. By reference to the table the defendant could fix to a day the time when the continued insurance would expire. This table provides that if five full years' premiums are paid that the insurance is continued for five years and three months. It also provides that if six full years' premiums are paid that the insurance is continued for five years and eleven months. It is seen, therefore, that by the payment of the full year's premium from the fifth to the sixth year, the insurance is continued eight months. Now what must be the result if the premiums are paid for five full years, and for six months on the sixth year, or five and one-half years in all? What is to become of the premium for the one-half year paid on the sixth year's insurance premium? Clearly, the insurance must be extended for one-half of the period fixed in the table for its continuance in the event that the full premium for the sixth year had been paid. Payment of the full year's premium would have extended the insurance eight months; the payment of one-half year's premium must, therefore, extend the insurance for a period equal to one-half of what it would have been extended by the payment of a full year's premium or for the term of four months, this being one-half of eight months. In the case at bar, the insured paid five full years' premiums, which entitled

him to five years and three months extended insurance. He then paid additional premiums for one-half of the sixth year, which entitled him to extended insurance for a period equal to one-half of that named in the table for six full years' payment, or, as shown, four months more continued insurance. At the time he quit paying the premiums, to wit, on July 14th, 1907, he was, therefore, entitled to continued insurance as follows: Five years and three months for the five full years' premium paid by him, and four months for the one-half year's premium paid by him up to July 14th, 1907, or five years and seven months in all. His continued insurance dates from July 14th, 1907.

Five years from that date was July 14th, 1912. Seven months from July 14th, 1912, expired February 14th, 1913. Mr. Clark died on December 5th, 1912. It is clear, therefore, that the insurance was in force at the date of his death.

To hold the contrary would be putting a most strained construction on the language of the policies and the agreement of February 18th, 1903, and one not to be arrived at except by the most ingenious strain of reasoning. Furthermore, it would be placing the insured at the mercy of a most technical and artistic construction of a contract which the law says would be most strongly construed against the defendant. The result would be, too, to permit the defendant to accept and retain one-half year's premium—$24.62— for which it gives the insured nothing whatever in return as continued insurance. There is nothing in the policies or the agreement requiring him to elect whether or not he desired continued insurance. It was optional, and the defendant has no right to undertake to deprive him of the choice. The agreement of February 18th, 1903, has not the slightest intimation in it that a full year's premium must be paid before the insurance is continued; on the contrary, the language contained in clause four specifically declares that all of the conditions of the policies, except as modified, remain

in full force, and there is no attempted modification of any benefits or conditions of the policies, except as to the time of paying the premiums. ' There is no evidence of any kind of notice from the defendant to the insured that his continued insurance would only apply annually and not by the quarter.

But the effort of the defendant to allow continued insurance by the year only, because the policies only stipulate annual extension, is entirely inconsistent with the other parts of its defense. By the testimony of its witnesses it, in undertaking to compute the insurance purchasable under the reserve fund, provided for in the second paragraph of page 3 of the policies, takes cognizance of and recognizes the two premiums paid in 1907, and bases its calculation on figures of which they are a part. The plaintiff does not claim under this clause at all. Why should the defendant be permitted to admit its liability for these premiums under one clause of its policies and denies its liability under another? That is just what it does. It admits that Clark should have credit for these premiums under this clause, but denies that he should have credit under the clause granting him continued insurance.

Why the distinction? The other, and the only other, contention of the defendant is that paragraph two, page 3, of the policies does not allow continued insurance if there is an indebtedness to the company. And that the two premiums for July and October, 1907, were an indebtedness that would bar the continued insurance. This contention cannot be sustained. There was no indebtedness to the defendant by the insured when the policies lapsed. It is admitted that Clark paid all premiums up to July 14th, 1907, and then quit paying. At that time the relative rights of the parties became fixed, and there is no evidence of any indebtedness from Clark to the company. The language of the section relied on precludes the contention of the defendant. The clause, section 1, page 3, of the policies, under`

which continued insurance is claimed, is, 'If any premium or interest·is not paid on the date when due, *and if there is no indebtedness* to the company, the insurance will automatically continue as term insurance from the date to which premiums were paid, etc.' The clause, 'and if there is no indebtedness to the company,' following the reference to the nonpayment of premium and interest, shows conclusively that any premium or interest thereon is not to be considered as an indebtedness that deprives the insured of continued insurance. Again, the next clause, reiterating the same idea, is, 'If any premium or interest is not paid on the date when due, and if there is *an indebtedness to* the company,' again shows that any past due premium or interest is not considered as a debt, and the language in section 5 of the general provisions that 'Any indebtedness to the company including any balance of the premium for the insurance year remaining unpaid, will be deducted in any settlement of this policy or of any benefit thereunder,' again shows that any balance of an insurance year's premium is not considered as a debt that bars any rights under the policies, but that such balance is merely to be deducted in any settlement of the policy or from the amount payable under either of the 'Six Accumulation Benefits' mentioned on page 1 of the policies. The third clause of the February 18th, 1903, agreement again asserts the idea that any unpaid installment of any premium is to be deducted from the settlement of the policy simply as a matter of accounting between the parties. The provision of the policy (column 1) for borrowing money from the company is clearly the indebtedness referred to in the clauses mentioning indebtedness to the company. The construction of the term 'indebtedness to the company' must be referred to, and construed with, the provisions of the policy providing for loans to the insured on which interest was to be paid at the rate of five per cent. per annum, thereby creating an indebtedness to the company as indebtedness is ordinarily contracted or created

between parties.   There was no indebtedness of the insured, Clark, to the defendant on July 14th, 1907.   That is admitted by both parties.   At that time all of the rights of the various parties became fixed, and their rights under the policies must be considered as fixed also.   The provisions in the policies and in the agreement providing that any unpaid installment of any insurance year's premium shall be deducted in the settlement of the policies, is simply the right reserved by the defendant that is usually reserved by insurance companies, to deduct the remainder of the premium due for the insurance year in which the insured died.   The effort of the defendant in its testimony to deduct this amount from the reserve referred to in paragraph 2, page 3, of the policies, thereby taking from the reserve that much of its purchasing power, could not be allowed if plaintiff was claiming under that clause of the policies.   This would not be deducting the remainder of the insurance year's premium in the settlement of the policies; it would be deducting it from a fund for the purchase of insurance held by the defendant to the credit of the insured and, if this was permitted, the defendant could deprive the insured of the benefits of this clause by so reducing his reserve purchasing fund by the reduction from it of a charge against the face of the policies themselves that the period for which it ought to buy insurance might expire before the rights of the insured could vest under it.   In other words, in no event could any unpaid installments of a year's premium be deducted from any fund due the insured except the face values of the policies themselves. The plaintiff objected to all of the testimony of the defendant that tended to modify, enlarge, or restrict the terms of the policies on the ground that it was incompetent as an effort to change the contract between the parties.   All parts of the testimony so tending is incompetent and is ruled out.

From all of which it follows that the plaintiff is entitled to a verdict and judgment in both cases.   It is, therefore,

Ordered, adjudged and decreed, that the plaintiff, S. Joyce Clark, do have judgment against the defendant, New York Life Insurance Company, in her action on policy number 3234947, in the following sums, to wit: Nine hundred seventy-five and 38-100 dollars ($975.38), and interest thereon at seven per cent. per annum since December 5th, 1912, amounting to one hundred fifty-five and 33-100 dollars ($155.33), aggregating one thousand one hundred thirty and 71-100 dollars ($1,130.71).

This allows a deduction of twenty-four and 62-100 dollars ($24.62) from the face value of each policy for the unpaid installments of the premiums due for the year 1907. Interest is allowed in each case on the balance of $975.38 due on each policy from December 5th, 1912, to the date of this judgment, March 16th, 1914. The promise of the defendant is to pay 'immediately upon receipt and approval of death' of the insured. It admits in its answers that it refused to furnish blanks for proof of death upon the application of the plaintiff, and that it has refused to pay her. It follows, therefore, that plaintiff is entitled to interest from the date of the death of the insured. The amount due was liquidated at that time. The prayer of the complaint did not ask for interest, it is true, but the prayer is no integral part of the complaint, and interest always follows by operation of law, the refusal to pay any past due liquidated demand. The plaintiff's counsel contends for it in argument and it is allowed.

Let judgment be entered for the plaintiff in conformity hereto in both cases."

*Messrs. James H. McIntosh and Thomas & Lumpkin,* for appellant, submit:

The question before the Court as raised by exceptions 1 and 5 is:

*Was his Honor in error in finding that clause second of the agreement of February 18, 1903, case, f. 102, so*

*enlarged or changed the table on page three of the policies as to extend the insurance by the payment of a quraterly premium?*

So much of the table as is necessary for a full consideration of this point is next below set forth:

| After Expiration Of | Column 1 Cash Loans | Column 2 Paid-up Insurance | Column 3 $1,000 Insurance Continued For | |
|---|---|---|---|---|
| | | | Years | Months |
| 1 Year | $ None | $ None | 0 | 2 |
| 2 Years | $ 63 | $ 57 | 1 | 5 |
| 3 " | $ 85 | $ 113 | 2 | 10 |
| 4 " | $ 112 | $ 152 | 4 | 0 |
| 5 " | $ 143 | $ 190 | 5 | 3 |
| 6 " | $ 167 | $ 223 | 5 | 11 |

And cite: 8 Ga. App. 246; 68 S. E. 52; 9 Ga. App. 781; 72 S. E. 170; 28 N. J. Eq. 167; 163 S. W. 1120.

And further submitted exceptions 6 to 11:

*The contention of the defendant company is that when an indebtedness exists against the policy on the date of the lapse, the table of values expressed in the policy do not apply, but continued insurance must be calculated under the reserve clause of the policy.*

And cite: Richard's Ins., par. 362; 122 N. C. 92; 30 S. E. 327; 65 Am. St. Rep. 693; 81 Fed. 938; 164 S. W. 107; 160 S. W. 140; 96 N. E. 648; 78 N. E. 714; 130 N. W. 435; 35 La. Ann. 226; 100 Mass. 500; 123 Mass. 113; 109 Ga. 381; 197 N. Y. 324; 140 N. Y. 79.

*Mr. Harry Hines,* for respondent.

May 24, 1915.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

Two actions were brought by the plaintiff against the defendant, and as the two cases were identical, by agreement of counsel, they were heard together at the April term of Court, 1914, for Lancaster county, by his Honor, Judge DeVore. A jury being waived, Judge DeVore filed his decree finding in favor of the plaintiff. Defendant appeals, and by thirteen exceptions alleges error on the part of the Judge in finding in favor of the plaintiff. The decree of Judge DeVore should be reported in the case. It will be seen by the exceptions that the question before the Court is: What right to extended or continued insurance did the insured, Adolphus J. Clark, have on July 14, 1907, the date of the lapse of the policies? The Court below found, and it is not disputed, that by the terms of the policies as originally written, Adolphus J. Clark, the insured, was entitled to five years and three months extended insurance as provided in the table in the policy, which term began on the 14th day of July, 1907, and expired on October 14th, 1912, or more than a month before the date of the death of the insured.

As originally agreed upon, the premiums on the policies in evidence were to be paid annually, and the first premiums were paid on that basis. On February 18, 1903, an agreement was entered into changing the mode of the payment of the annual premium to quarterly payments. Under this agreement and clause, "second" thereof, it was the contention of the plaintiff, and held and found by the Circuit Court, that upon each payment of the quarterly premium, the extended insurance therein expressed and stipulated was increased proportionately, and that, therefore, the two payments made by the insured, Adolphus J. Clark, on the sixth annual premium increased the extended insurance provided for in the table for four months, which would carry the insurance in force, according to the finding and decree of his Honor, to February 14, 1913, which was after the death of the insured, Adolphus J. Clark, on

December 5th, 1912. The policies were introduced in evidence, and had notations on them in pencil, which the evidence shows was made by the deceased insured, Adolphus J. Clark: "Premiums paid on this policy for five and one-half years (up to July 14th, 1907). This extends the policy for five years and seven months after said date, or February 14th, 1913." This clearly shows how the insured construed the agreement and what his understanding was.

In *Williamson* v. *Association,* 54 S. C. 593, 32 S. E. 769, this Court laid down this wholesome rule by Mr. Justice Gary (now Chief Justice) wherein as the organ of the Court he says: "It is a well known fact that comparatively few people who become shareholders in such associations are familiar with their by-laws. They rely upon the honesty, integrity and fair dealing of those who manage the affairs of the association. It is also a well known fact that the by-laws are frequently intricate and almost unintelligible to the average shareholder, and that those in charge of the affairs of the association usually become exceedingly expert in the interpretation of them, thus giving the association a decided advantage in the way of information over the shareholders. Public policy, in order to prevent the perpetration of fraud, and to prevent just such a case as we now have before us, in which the plaintiff alleges that he was induced by the express promises and the literature of the defendant to part with his money, in purchasing its shares of stock, demands that the defendant should not be allowed to elect whether it will be bound by its by-laws, or its express agreement, as to the time when the shares would mature. These views render unnecessary a considration of the rule of interpretation discussed in the case of *Wis. M. and F. Ins. Co. Bank* v. *Wilkin,* 95 Wis. 111; 69 N. W. 354, 60 Am. St. Rep. 86, and in the extensive notes to that case, that when two clauses of a contract are in conflict, the first governs rather than the last. The circular will next receive consideration. The construction of a writ-

ten instrument is a question of law to be decided by the Court. This Court has the right, therefore, to construe the circular. It unquestionably shows that the defendant interpreted the contract to mean that the shares would mature *at a fixed and definite period*. It is a well settled principle that when the construction to be given a contract is rendered doubtful by the language thereof, the interpretation of the contract by the parties themselves, is entitled to great weight. *Chicago* v. *Sheldon*, 9 Wall. 50; *Railroad Co.* v. *Trimble*, 10 Wall. 367; *Steinbach* v. *Stewart*, 11 Wall. 566; *Lowber* v. *Bangs*, 2 Wall. 728."

We think that Clark's interpretation of the contract was correct, and we agree with the Circuit Judge both as to his finding and reasoning in reference to the construction, and we see no error at all on the part of the Circuit Judge in his decree as complained of on the part of the defendant and as made by the exceptions. All exceptions are overruled. Judgment affirmed.

MESSRS. CHIEF JUSTICE GARY and JUSTICE FRASER concur in the opinion of the Court.

MR. JUSTICE HYDRICK dissents.

MR. JUSTICE GAGE (concurring in the result). I must concur in the opinion of Mr. Justice Watts; but the contention of the appellant is so strong, I have thought proper to reduce my own views to writing.

The case turns on a very narrow issue. The facts are novel; they need to be correlated, and in that process not much help can be had from the consideration of other cases.

The thing to be decided is the construction of a contract for life insurance evidenced by the policy and a paper writing amendatory thereof.

The policy in issue was written 14th January, 1902; the amendment was made 18th February, 1903; the annual

18—101

premiums were agreed to be paid in advance, the first on 14th January, 1902, and the others yearly thereafter.

The policy provided "if any premium is not paid on the date when due * * * the insurance will automatically continue * * * from the date to which *premiums were paid* * * * for the term specified (in an annexed table)."

That table provides, "after expiration of five years," that is, after the payment of five years' premiums, then an extended or continued insurance shall be effective beyond that period five years and three months more. That is to say, the policy shall live five years and three months after default in the payment of premiums.

The rights of the insured in this case are those of a policyholder who has "no indebtedness" to the company. The only indebtedness to the company pretended by it is evidenced by notes made for a premium. If that be a debt which was contemplated by the terms of the policy, then it existed without reference to the making of notes, for the note is only evidence of the debt. Yet that was not contemplated.

Indebtedness, as used by the policy, plainly means indebtedness for money borrowed on the policy, called "cash loans payable on demand." And the meaning of the words is not enlarged by the third paragraph of the amended contract of 1903. Therein an unpaid premium is called indebtedness; but plainly not in the sense named in the body of the policy.

The insured paid the premiums for years 1902, 1903, 1904, 1905, and 1906; and he paid one-half the premium for the year 1907.

It is conceded by the plaintiff that the policy would have been forfeited on 2d December, 1912, but for this last payment, which squared all premiums up to 14th July, 1907.

For the insured died on 5th December, 1912, and five years and three months, the survival life resulting from

first five years' premiums, mounted on 14th July, 1907, would reach only 14th October, 1912.

The plaintiff, however, contends, that inasmuch as the "table of cash loans of paid up or continued insurance" allows five years and three months extension for five annual payments, and five years and eleven months extension for six annual premiums, therefore, the extension for five and a half years' premiums ought to be five years and seven months, to wit, up to January 14th, 1907.

In a word, after the amendment of 18th February, the plaintiff rejects the year as the unit upon which an extension must be mounted, and contends that a quarter or a half year may be a unit, because a half year's premium was paid and accepted.

The defendant, of course, rejects that view.

For support, the plaintiff relies on the amendment to the contract of insurance made as aforementioned, and which he claims modified the terms of the policy.

The premiums had been theretofore paid by the year; this amendment provided for payment of them by the quarter, and that was plainly the primary purpose of its making; but it embraced other stipulations.

The pertinent clause of that contract is this: "That all the *conditions* of said policy as to  *  *  *  nonpayment of any premium shall apply to any *installment* payable under the preceding agreement."

Confessedly before the amendment, the default of a premium for a whole year, payable at the outstart on the first day of the premium year, had been the lapsed event from which imputed life in the policy should be extended.

The policy read, in the aforesaid table, "after expiration of five years  *  *  *  insurance continued for five years and three months." (Extreme left marginal column at the top of it and column 3).

But the amendment declared that the conditions of the policy as to nonpayment (and payment, too, but that is

irrelevant to the inquiry) should apply to any *installment.* I have italicized the two words of import, the words conditions and installment.

Technically speaking the policy states no "condition," and it does not use that word or the word forfeiture; on the contrary, it declares that the policy is *"automatically nonforfeitable;"* but the last three words of the paragraph marked "first" on page 3, sets out that which will work a forfeiture.

The only condition, meaning a clause in a contract made to defeat it, pertinent to this inquiry, is that expressed in the paragraph marked "first" on the 3d page of the policy.

The amendment by express words makes that condition, that method of forfeiture, *applicable* to a *quarterly payment,* to wit: "Any installment payable under this preceding agreement," as well as it had been applicable to an annual payment. How applicable? And if applicable, entirely so.

The appellants conceded unusual import to the date July 14th whenever they reckon the date of the default to have occurred on 14th July instead of 14th January. They say "the rights of the parties under the policies of insurance before the Court became fixed on the 14th day of July, 1907. "If the half year's payment had no effect to revive, then it had no effect at all, and the policy lapsed on 14th January before. And if the half year's payment had the effect to revive, which is tacitly admitted by appellants, then it carried all the fruits of revival. It is true the extreme left column of the table has not been expressly amended to meet the case, but the implication is if the default occurred at the beginning of a quarter instead of a year, to wit, on 14th July, then the policy *survived from that date,* and such survival was fed *by all that had been paid in as premium,* and for so long a time as might be computed from the data of the policy. The table before referred to shows upon its face that the survival period of

a policy lasts in proportion to the accumulated premiums; the greater the accumulation of the premiums the longer the survival period.

This date, in the 3d column, shows that after five years of accumulated premiums, the survival life of a half year's premium paid thereon would make the policy to survive for yet four months in addition to five years and three months. That would make the policy outlive the assured.

This conclusion is reinforced by the reflection, that forfeitures are not favored in law; that the act and instrument which works a forfeiture ought to be plain, and that in a case of doubt, the insured ought to have the benefit of the doubt, and the forfeiture ought to be solved against him who asserts it.