LOVERIDGE *v.* LARNED.

(*Circuit Court, S. D. New York.* April 28, 1881.)

1. RENEWAL OF FIRM DEBT BY PARTNER—PAYMENT OF UNLAWFUL INTEREST APPLIED TO THE PRINCIPAL — BILL TO REDEEM — DEMURRER—COSTS.

A. loaned the firm of B. & C. various sums at different times, receiving firm notes, payable with unlawful interest. B. subsequently took up all the notes except one, giving therefor his bond, secured by mortgage and collaterals. B. paid part of the principal on the note not taken up, and the stipulated interest on all the loans. C. died,

B. became bankrupt, and his assignee brought this bill to redeem the mortgaged estate and collaterals, alleging that the above debts were satisfied by the payment of the several sums of money which had been paid on account of the debts, but without alleging that any part of them was paid as unlawful interest, or setting up that fact as a ground of extinguishment of the debts, or as affording or affecting any relief. *Held :*

(1) That the law implied no satisfaction of the firm debts by the giving of B.'s obligation therefor, because it was the intention of the parties to give it in renewal and not in extinguishment and substitution of the firm debts.

(2) That the money paid beyond lawful interest on account of a debt, is, in legal effect, a payment upon the debt, and that the fact was well stated in the bill as constituting payment.

(3) That the plaintiff, as assignee, is vested with all the rights of the bankrupt, B., as the surviving partner, to have the debt reduced to its just proportions.

(4) That as the debts were kept separate and distinct from each other, and interest was paid expressly upon each, and not in gross upon the whole, the payments on account of each debt are to be applied to the legal interest then due on that debt, and the residue to the principal as of that date.

(5) That the objection that the bill was defective because it did not tender the balance due, not having been taken by demurrer or otherwise until the hearing, cannot prevail now.

(6) That the defendant having denied the right to redeem, and the orator not having tendered the balance due, neither party should be allowed costs.

In Equity.

*George A. Black,* for plaintiff.

*F. A. Paddock,* for defendant.

WHEELER, D. J. This cause has been heard on pleadings, proofs, and arguments of counsel, from which it appears—

That in 1870 John R. Hoole and his son, John R. Hoole, Jr., were in business in partnership, in the city of New York, under the firm name of John R. Hoole & Son. At various times in the latter part of that year, and the forepart of the next, they borrowed money of the defendant, and gave him firm notes for it,—$3,000, July 26, 1870 ; $1,000, August 26, 1870 ; $2,000, October 25, 1870 ; and $1,200, March 8, 1871, at 18 per cent. interest ; and $5,000, September 1, 1870, at 24 per cent interest,—all secured by collaterals. November 3, 1871, John R. Hoole took up all the notes and collaterals belonging to them, except the note of $5,000, and gave therefor his bond, secured by mortgage, for $6,750, and his note of $450, which was soon paid. John R. Hoole, Jr., died in the spring of 1872, leaving John R. Hoole surviving partner, who continued the business. May 4, 1873, Hoole paid to the defendant $3,000 of the $5,000, and gave his note of $2,000 for the balance of that note, and took up the col-

laterals belonging with it, except two policies of insurance upon his life. November 20, 1873, the defendant lent him $715.85, at 18 per cent. interest, and took his note therefor, secured by the two policies of insurance; and in October, 1875, another policy was delivered to further secure the two notes. Twenty-four per cent. interest was paid on the loan of $5,000 from the time it was made, and on the $2,000 residue after the $3,000 was paid; and 18 per cent. on all other loans from time to time down to May 3, 1876; leaving the principal sums of $6,750, $2,000, and $715.85 then apparently due. Early in 1877, Hoole was adjudged a bankrupt. The orator, who was book-keeper for the firm, and afterwards for him, became the assignee of his estate.

This bill is brought to redeem the mortgaged estate and insurance policies, alleging that these debts have all been satisfied by the payment of the several sums of money which have been paid on account of the debts, without alleging that any part of them was paid as unlawful interest, or setting up that fact as a ground of extinguishment of the debts, or as affording or affecting any relief. The orator claims that the payments throughout the whole time should be applied to the extinguishment of lawful interest due on all the debts at the time of payment, and then to the principal of the debts. The defendant insists—

That payment beyond legal interest was unlawful only by statute, and that as the payments in question were in fact made upon interest, and not upon principal, they cannot be made to apply upon principal, except upon pleadings setting forth the facts as to how the payments were made as ground for relief according to the effect of the statute; that the orator, as assignee, has no right to have them treated otherwise than as payments of interest, as they were made by the bankrupt; that, if any payments can be applied to these principal sums, none but those made by the bankrupt in his individual right can be; that the payments upon each note must be applied to that note only, and that none can be carried from one note to another, although some should be more than paid.

There is some controversy as to what the effect of the transactions was by which the firm notes were taken up and the obligations of the bankrupt given. The testimony of the parties to them has been taken upon their respective sides, but they do not differ much as to the facts, although they do as to the construction put upon the facts. The orator, as book-keeper, had knowledge of that business. His testimony has been taken, and, in view of that of the others, seems to be reliable, and throws light upon this subject. He was asked:

" What was the regular and customary rate at which you paid interest on these loans ?"

And answered :

" The loans originally were made at two different rates of interest. The original loans were never lost sight of. The interest was made up on the original amounts, except as reduced by the $3,000 payment and the $450 payment. The $5,000 loan was at 2 per cent. per month, and Mr. Hoole, when he paid the $3,000, paid it it on account of that loan. Thereafter, Mr. Larned's statements were rendered for $2,000 at 2 per cent., and the other separate loans at 1½ per cent. a month."

" Did these statements always distinguish these several loans, or were they united in one amount ?"

" They were never so united. The original loans were always kept in view and referred to."

Upon the whole evidence it is found as a matter of fact that the loans were the same throughout, and that the change of obligations and securities was, and was intended by the parties to be, in renewal and not in extinguishment and substitution, unless in law it must be considered otherwise. And this does not seem to be the case, for although in some states giving a new note is *prima facie* a satisfaction of the old debt, in other states and in England it is not, unless agreed to be, in satisfaction; and nowhere is it understood that the law implies satisfaction from the giving a new note when the parties intend it shall not be. That the new note was that of a partner alone, given for a firm debt, does not vary the effect under these circumstances. Coll. on Part. (Wood's Ed.) § 750, note. The partner was liable for the whole debt before, and his renewal was in renewal of his own debt; what was paid was upon the debt.

Although the statutes of New York are not understood to provide that unlawful interest paid may be recovered back, still it is not doubted or contended in this case but that it may be in a proper action; nor but that, as between the parties, application of it to the principal may be compelled. Bac. Abr. "Usury," G. This suit is brought to compel such payment, not to recover anything back. The money paid beyond lawful interest on account of a debt, is, in legal effect, a payment upon the debt. The bill was not and could not properly be framed under any code of procedure requiring the

facts to be stated in any particular manner, but under the equity system adopted for the United States courts. Rev. St. § 913. This was the English chancery system in use when the adoption took place. Under that system the facts stated as affording grounds for relief were to be or might be stated according to their legal effect. In this case the fact was well stated as constituting payment, and the objection to relief on that account cannot be sustained. These same considerations answer the objection to going back with the transactions into the partnership business. The successive notes represented the debts justly due, and no more. The partnership business came to the bankrupt as survivor. He became entitled to and held the whole as survivor, subject only to accountability to the representatives of his copartner. He had the right as survivor to have the partnership debts brought within their legal limits, and his obligations given for them reduced to what they should be. Each debt was a continuous thing, and the last of the notes given in renewal of each debt represented only what was justly remaining due upon that debt. *Upham* v. *Brimhall*, 11 Met. 576; *Nat. Bank* v. *Lewis*, 75 N. Y. 516; *Heath* v. *Griswold*, 5 FED. REP. 573.

There is no other party to whom the defendant can be liable for this excess. All rights of action belonging to the partnership vested in the bankrupt, as survivor, and so fully that he could join them with causes of action in his individual right. The assignee succeeded to his rights in his estate, and has the same right to have the claims upon the estate reduced to their just proportions that he had. This was held in favor of assignees in bankruptcy as long ago as *Bosanquett* v. *Dashwood*, Cas. Temp. Talb. 38. It has been held that the equitable jurisdiction in bankruptcy goes further than either courts of law or equity in such cases. *Ex parte Scrivener*, 3 Ves. & B. 14. *Bosanquett* v. *Dashwood* was like this case in many respects. The orator does not go quite so far in his asking in this case as the court went in that.

As these debts were kept separate and distinct from each other, and interest was paid expressly upon each and not in

gross upon the whole, as has been found and stated, there is no apparent ground upon this bill, which only goes for the application of payments as such, for applying the excess over one loan to the payment of another. All payments so taken from one debt to another would, in effect, be recovered back, and the bill is not adequate to such relief. The payments on account of each debt are to be applied to the legal interest then due on that debt, and the residue to the principal as of that date. This method will extinguish the $3,000 note, but probably not the other debts. Schedule A is conceded to show the times of payment, and the amount remaining due can be readily ascertained by computation. It is objected that the bill is defective in not offering to pay the balance due. The objection was not taken by demurrer nor otherwise until the hearing, and cannot prevail now. In bills to redeem, costs are generally allowed to the defendant; but in this case the defendant has denied the right to redeem, and the orator has not tendered the balance due, and no costs are allowed either way.

Let a decree be entered for an account, if necessary, of the sum due on each debt, and for the redemption of the mortgaged premises, on payment of the sum due on the mortgage, and of the policies of insurance, on payment of the sum due on the note of $715.85, to the clerk of this court, for the benefit of the defendant, within 10 days from entering the decree, and that in default of such payment the bill be dismissed.