MARY H. UNDERWOOD v. JEFFERSON STANDARD LIFE INSURANCE COMPANY.

(Filed 15 April, 1919.)

1. **Insurance, Life—Policy—Assignment—Change of Beneficiary.**

    The stipulation on a policy of life insurance to the effect that its beneficiary may be changed by the insured with the written endorsement thereon by the insurer, while it is unassigned, is to protect the insurer from liability to a stranger, and has no application where the policy has been assigned to the insurer to secure a loan made to the insured and the beneficiary, and the insurer thereafter permits a change of the beneficiary to the estate of the insured, and loans an additional sum thereon, taking the policy, properly assigned, as security for the payment of the second loan, also.

2. **Same—Waiver.**

    The stipulation on a policy of life insurance to the effect that the beneficiary may be changed, when unassigned, with the written endorsement thereon by the insurer, is one that the insurer may waive by its act or conduct, or by assenting thereto, unless it has previously been assigned to a stranger, in accordance with the policy provision, who has thereby acquired rights therein.

3. **Insurance, Life—Extension Notes—Extended Insurance—Computation of Period.**

    Where, for the payment of a premium due on a life insurance policy, the insurer has taken the note of the insured, called a "blue note," for the difference between a cash payment and the amount due, stating that no part of the premium has been paid, but that the policy would remain in force to the due date of the note, if paid by that time, otherwise it shall automatically cease to be a claim against the maker, the company to retain the cash as part compensation for the rights and privileges thereby granted, and the rights of the insured in the policy should cease,

the payment of the cash and the giving of the note did not of itself work an extension, and its nonpayment, in accordance with its terms, renders the transaction the same as if the note had not been given; and the computation of extended insurance, in its relation to the money loaned the insured, as provided in the policy, will commence from the date the premium was due, and not from the due date of the note.

4. **Insurance, Life—Loans—Premium Notes—Premiums—Extended Payments.**

Where upon the face of a policy of life insurance is given nonforfeitable values for loans, the company will make and also extended insurance set opposite each successive year, these values to be proportionately reduced in the event of any indebtedness against the policy, and requiring that premiums be paid to the next succeeding date, in determining the amount of the loan on the date of application therefor, the amount set opposite the date to which the premium had been paid, is that from which the loans made upon the assigned policy must be deducted, in determining the extension value of the policy, the requirement that the premium be paid to the next succeeding date having no relation to the amount the company will lend at that time; and no loan made to the insured will be considered in such computation unless made by the insurer upon the policy as security.

5. **Insurance—Policy—Contracts—Ambiguity—Interpretation.**

A contract of life insurance is expressed in language selected by the insurer for its purpose, and in construing the policy all doubts as to its meaning in case of ambiguity will be resolved in favor of the insured.

6. **Supreme Court Decisions—Facts.**

In applying a former decision of the Supreme Court to the facts of a present case, the law will be as declared upon the facts stated by the Court in the decision referred to, in the absence of any correction of the alleged mistake by petition to rehear.

ACTION tried before *Shaw, J.,* at December Term, 1918, of GUILFORD.

The case is as follows: The policy was issued by the Greensboro Life Insurance Company, 1 August, 1905, and on 12 September, 1912, this company was merged with defendant. Nine full annual premiums were paid, the last being paid to the defendant on or about 1 August, 1913. The premium due on 1 August, 1914, was not paid in full, but $66.85 was paid upon it and a "blue note" for $96 was given, which plaintiff contends by its terms kept the policy in force until 1 February, 1915. The policy was originally payable to Ruth Underwood, daughter of insured, as beneficiary, but on 1 October, 1907, the beneficiary was changed to the plaintiff. While plaintiff was beneficiary the insured and plaintiff borrowed $385 from the Greensboro Life Insurance Company and assigned the policy sued on as security for the loan. While the policy was thus assigned to the company the assured changed the beneficiary, this time from plaintiff to his estate; and while his estate was beneficiary he borrowed sums from the Greensboro Life Insurance Com-

pany aggregating $342.29, thus bringing his total indebtedness to $727.29, which was charged against the policy, as a lien on it, in the hands of the company by assignment to it. Of this amount plaintiff signed a note for $385; and of the remaining $342.29, $162.04 was spent in paying the premiums on said policy. After the last loan was obtained by insured he again changed the beneficiary from his estate to the plaintiff.

Insured did not at any time avail himself of the privilege of taking the paid-up policy allowed him by nonforfeiture provision (2) set out below. The policy, among other provisions, contained the following:

Relevant portions of Tables A and B:

| TABLE A | | | TABLE B | | |
| Nonforfeiture Values | | | Nonforfeiture Values | | |
| After end of year | Loan Value | Paid-up Policy | Ext. Ins. Yrs. | Mos. | After end of year |
|---|---|---|---|---|---|
| 2 | $ 165 | -------- | 0 | 2 | 2 |
| 3 | 275 | 530 | 3 | 0 | 3 |
| 4 | 385 | 795 | 5 | 2 | 4 |
| 5 | 500 | 1,060 | 8 | 0 | 5 |
| 6 | 620 | 1,325 | 10 | 0 | 6 |
| 7 | 750 | 1,590 | 12 | 10 | 7 |
| 8 | 875 | 1,855 | 15 | 0 | 8 |
| 9 | 1,010 | 2,120 | 17 | 0 | 9 |
| 10 | 1,180 | 2,385 | 19 | 0 | 10 |

Tables A and B of nonforfeiture values on the margin of the page show the guaranteed values of this policy corresponding to the number of years for which full annual premiums have been paid, and in the event of any indebtedness against this policy these values will be reduced proportionately.

### NONFORFEITURE PROVISIONS

(1) Loans will be made by the company in accordance with Table A upon satisfactory assignment of this policy as sole security, at a rate of interest not to exceed 6 per cent per annum, provided premiums are duly paid to the anniversary next succeeding the date when the loan is applied for.

(2) If provision (2) has not been availed of one month from default in payment of premiums, the company will voluntarily extend this policy in the first-named sum on page 1 as automatic paid-up term insurance in accordance with Table B.

Change of Beneficiary: The insured may, while this policy is in force unassigned, change the beneficiary, and such change will take

effect when endorsement thereof is made by the company upon this policy.

Assignment: No assignment of this policy shall be valid unless made in writing, and the original or a duplicate original filed in the home office of the company. The company will not be responsible for the validity of any assignment.

This policy is incontestable after one year from date except for nonpayment of premiums.

On 2 September, 1914, the insured paid to the defendant $19.97 unearned interest on the loan of $727.29, as shown by article 19 of the complaint, and not denied in the answer. The insured and the plaintiff, on 21 August, 1912, executed a note to the Greensboro Life Insurance Company for $150. This note was unsecured, did not refer to the policy, nor profess to be a lien upon it, nor was the policy assigned to secure it, and was afterwards destroyed by the defendant's vice-president.

The following is a copy of note for indebtedness to the company secured by the assignment of the policy:

$727.29.                                    No. ..................

This is to certify that I, the undersigned, the insured, and beneficiary, respectively, under, and the sole owner of, Policy No. 792, issued by the Greensboro Life Insurance Company, have this day borrowed from the said company the sum of seven hundred twenty-seven and 29-100 dollars, and hereby assign the said policy and all profits and benefits now due or which may hereafter become due thereon, to secure the repayment of said loan and the interest thereon as herein provided.

The following is a copy of the "blue note":

GREENSBORO, N. C., August 1, 1914.

On or before the 1st day of November, 1914, without grace and without demand or notice, I promise to pay to the order of Jefferson Standard Life Insurance Company one hundred twenty-three 6-100 dollars, at their home office in Greensboro, N. C., with interest at the rate of 6 per cent per annum.

This note is accepted by said company at the request of the maker, together with $38.89 dollars in cash, on the following express agreement:

That although no part of the premium due on the 1st day of August, 1914, under policy No. 792-G on the life of W. I. Underwood has been paid, the insurance thereunder shall be continued in force until midnight of the due date of said note; that if this note is paid on or before the date it becomes due, such payment, together with said cash, will then be accepted by said company as payment of said premium, and all rights under said policy shall thereupon be the same as if said premium had

been paid when due; that if this note is not paid on or before the day
it becomes due it shall thereupon automatically cease to be a claim
against the maker, and said company shall retain said cash as part com-
pensation for the rights and privileges hereby granted, and all rights
under said policy shall be the same as if said cash had not been paid
nor this agreement made.

Judgment for the amount of the policy and interest at 6 per cent,
less $150 and interest thereon and costs, from which defendant appealed.

*Chas. A. Hines and Thos. C. Hoyle for plaintiff.*
*Brooks, Sapp & Kelly for defendant.*

WALKER, J., after stating the case: The plaintiff contends, upon the
above stated facts, that the policy was kept in force until after the death
of the insured by the nonforfeiture provisions above set forth. And, for
the purpose of calculating the extended insurance, she insists that the
value of the policy at the end of the ninth year was $1,010, the number
set opposite the figure 9 in Table A, and from this sum should be taken
the amount for which the policy was liable; and she further contends
that this amount was the sum of $385 (the amount of the note she
signed), and $162.04 (the sums used in paying premiums on the policy),
less $19.97 (the amount of unearned interest), in all $527.07. The ex-
tended insurance, as the plaintiff contends, is therefore $1,010—$527.07
of seventeen years, and should be counted from 1 February, 1915.

The defendant contends, on the other hand, that in calculating the
extended insurance the value of the policy at the end of the ninth year
was only $875, the number set opposite the figure 8 in Table A, and by
the application of the nonforfeiture provision (1) above set forth. It
also contends that $727.29 should be deducted from $875, in order that
the term of extended insurance may be calculated, and that such ex-
tended insurance should be counted from 1 August, 1914, the date of the
note, and not from the due date of the premium note. It is conceded
by the defendant that if $1,010 was the value of the policy at the end
of the ninth year (and especially if the amount of the note for $150
due the company is not to be added to the other indebtedness), it was
in force at the death of the insured; and, on the other hand, plaintiff
conceded that if the value of the policy at the end of the ninth year was
only $875, and the debt properly chargeable against it was $727.29,
then the policy had expired before the death of the insured.

The plaintiff further contends that the only amounts chargeable
against the value of the policy in computing the extended insurance is
$385, the original loan signed by her, and $162.04, the portions of the
other loans used in paying the premiums, and from this, she contends,

·should be taken $19.97 unearned interest paid to the defendant, and her reasons are as follows:

(*a*) The policy provides that the insured may, while this policy is in force and *unassigned,* change any beneficiary, and that there is no ques- ·tion that this policy was assigned to the company at the time when the ·attempted change in the beneficiary was endorsed on the policy, and therefore the attempted change was null and void, the rule of law being that where provision is made in a policy for a change of the beneficiary the right must be exercised in strict accordance with the provisions of the policy, and she cites for this position *Lanier v. Ins. Co.,* 142 N. C., 14; 14 R. C. L. Insurance, sec. 554, *et seq.;* 14 R. C. L., pages 1390- 1391; ·and that where an insurance policy provides for a change of the beneficiary the latter has a vested interest therein subject to be divested, and then only in strict accordance with the provisions of the policy, for which contention she refers to *Deal v. Deal* (S. C.), 69 S. E., 886; *Arnold v. Ins. Co.* (Ga.), 60 S. E., 470; *Mutual Benefit v. Willoughby,* Ann. Cases, 1913, D., 828, note. And further, she contended that if the attempt to change the beneficiary from the plaintiff to the estate of the insured was a nullity, and the plaintiff continued to be the beneficiary, then loans made against the policy, evidenced by the notes which she ·did not sign, were invalid as to her, as "under a policy for the benefit of the wife and children of the insured, an assignment by the insured will not cut off their interest, even though it is contingent at the time the assignment is made." 25 Cyc., 778-9.

Answering this contention, it may be said that the assured had the right to change the beneficiary by designating his personal representa- tive, for the use of his estate, as such. The policy had not been "as- signed," in the sense that word is used in the contract. The assignment spoken of is one to a stranger, and not one to the company, for the latter could waive any objection to the change of the beneficiary, and did so by assenting to the one which was made in this case. Where a stranger is assignee, his rights could not materially be affected in the absence of his consent, and consequently the company, without authority for that purpose, could not waive for him. The provision was inserted to prevent confusion or complication, and to relieve the company from any danger of liability growing out of changing the beneficiary after the policy had been assigned. These reasons of course would not apply where the assignment has been made to the company itself. The debt, therefore, was $727.29, instead of $527.07, as contended by the plaintiff, and we think it was that amount, in any view, as the difference between the two was the amount of the debt contracted while the estate was assignee, and the company had the right to make the loan, notwith- standing the assignment and without the plaintiff's consent.

(*b*) The defendant admits that it did not earn $19.97 of the interest that was paid to it by the insured on 2 September, 1914, but contends that this amount should be applied on its unsecured note for $150 which it destroyed. This contention, says plaintiff, is unsound, for it is clear that this payment of unearned interest should be applied to the note upon which it was paid and reduce its amount, and she relies upon this authority for so contending: "Except when otherwise agreed, a payment made on an indebtedness consisting of principal and interest and applied by either the debtor or creditor, will be applied first to the interest due and then to the principal. Payments of interest by mistake when no interest is due is applied as payment on the principal debt at the date of maturity of the obligation. When payments of interest are made in excess of the legal interest due, the excess will generally be applied to the principal." 30 Cyc., 1249-50. "Money paid beyond lawful interest on account of the debt is in legal effect a payment upon the debt." *Loveridge v. Larned,* 7 Fed., 294.

As to the "blue notes."

(*c*) Again plaintiff insists that the "blue notes" and payments of cash in connection therewith kept the policy in force until 1 February, 1915.

We need not discuss in detail all of the questions raised on this appeal, as we are satisfied that the admission of the parties as to certain facts are sufficient for our purpose in deciding the case upon one or two grounds alone.

Our opinion is that the extension period of the insurance should be counted from 1 August, 1914. The object of the "blue note" was not to fix a new date for this purpose, that is, 1 February, 1915, but it was given by the assured and taken by the company as an accommodation or indulgence to the former, something like a grace or favor to him in the way of extended time for payment of the premium, and not as in itself a payment of the premium. If the note was not paid it was the same as if it had never been given, and there was a default in the payment of the premium as of 1 August, 1914, in which event the extended insurance would automatically start, and prevent a lapse of the policy. We have so held in a case very similar to this, and exactly the same as this case in all of the essential facts relating to this question. The Court in *Sexton v. Ins. Co.,* 157 N. C., 142 (*S. c.,* 160 N. C., 597), was called upon to construe an instrument substantially worded as is the "blue note" in this case, and it was said by *Justice Brown,* 157 N. C., 144: "There is no evidence that the defendant accepted the note as a payment for the premium. It is clearly an extension of the time of payment. In express terms the note on its face declares the policy is void if the note is not paid when due. This note is similar in language to the one construed in *Ferebee v. Ins. Co.,* 68 N. C., 11." The Court

further said, at page 145, quoting from 3 Cooley's Briefs on Insurance, p. 2269, and citing *Pitt v. Ins. Co.*, 100 Mass., 500: "It is commonly stipulated by insurance companies that if a note is accepted for a premium a failure to pay the note at maturity shall terminate the insurance. When the policy, or the policy and the note, contained a stipulation to this effect, a failure to pay at maturity a note given for a premium will work a forfeiture of insurance." See, also, *Murphy v. Ins. Co.*, 167 N. C., 334. The extension clause was inserted to save the policy from forfeiture or to prevent one. The giving of the note and payment of cash for the premium did not work an extension. The Court in *Bank of Commerce v. N. Y. Life Ins. Co.*, 54 S. E. (Ga.), 643, deciding the same question, held: "The fact that $21 was paid in cash upon the premium did not operate to extend the policy, there being in the contract nothing declaring that a payment of a part of an annual premium should give a continuation period proportionate to the fraction of the premium paid. . . . The validity of this contract cannot be successfully questioned. It did not undertake to destroy any existing right of the beneficiary under the policy. The extension of time was a favor, not a right, and the allowance of additional time for payment of a premium beyond its maturity did not operate to confer still further rights in spite of the terms of the extension." The same decision was made in *U. S. Life Ins. Co. of Portland, Me. v. Adler*, 73 N. E. (Me.), 835, and the case strongly supports this view.

But if the extended insurance began on 1 August, 1914, instead of 1 February, 1915, the policy was alive and in full force when the assured died, because when his indebtedness to the company is deducted or, rather, properly proportioned to the loan value of the policy, there is enough of the latter left to carry it beyond the day of the death. In other words, there was not enough indebtedness to have caused a lapse, or the expiration of the policy, before that event, and this is certainly true if the note for $150 is not to be counted as a part of the indebtedness.

We may well pause here to again consider the case of *Sexton v. Ins. Co., supra,* in another aspect, as defendant contends that $875 is the proper loan value of the policy and not $1,010, because in the *Sexton* case (160 N. C., 597, at 600) the Court states: "It is true the plaintiff claims that under the automatic extension feature of the policy, there having been a payment of three annual premiums, the plaintiff was entitled to an extension to the amount marked on the policy. The policy, which was in evidence, provided that the 'nonforfeiture value on the margin of this page shows the several guaranteed values of the policy corresponding to the number of years for which annual premiums have been paid, and in the event of any indebtedness against this policy

these values will be reduced proportionately.' This table shows that where three annual premiums have been paid, as in this case, the loan value was $60, which would have entitled the insured to three years and one month's extension. But it appeared in the evidence of the plaintiff that the insured had borrowed said $60 from the company, which was unpaid, and therefore, upon the plaintiff's evidence, the insured was entitled to no extension."

Defendant then says that the original record of this case shows that there had been four premiums paid instead of three, and it deduces from this fact that the court adopted the loan value of three payments, when there had been four, as it practically says should be done in this case. But that is a *non sequitur*. It does not follow that, because the court may have made a mistake as to the number of payments, it has held that defendant's contention is right as to what is the loan value, for the law is stated correctly upon the assumption that there were only three payments. "There having been payment of three annual premiums, the plaintiff was entitled to an extension to the amount marked on the policy," that is, the amount set down next opposite the figure 3, and the court so allowed, and adjudged accordingly. It is perfectly clear that the court did not mean otherwise, and that it acted upon the assumption that there had only been three premiums paid. We do not know what the record shows, or whether this was a mistake in fact, but we must take the law to be as declared upon the facts stated by the court, in the absence of any correction of the alleged mistake by petition to rehear. The parties seem to have been contented with the statement of the fact as it was made. But, however that may be, we are decidedly of the opinion that the only construction of the policy is that the figures next opposite to "nine" in the first column of the table are the correct ones to be adopted here.

If there had been no indebtedness the period of extension after eight full payments of premiums would have been fifteen years, and after nine payments it would have been seventeen years. In the former case the "loan value" of the policy would have been $875 and in the latter case $1,010. This is according to the table of values of term and paid-up policies showing the length of extended insurance in the case of the former class or term insurance. The provision as to the payment of the premium to the anniversary next succeeding the date of a loan cannot operate, by any fair or reasonable construction, to reduce the loan value of the policy to $875, as that provision was a mere condition annexed to the making of the loan, and was evidently not intended to decrease the loan value or to give any benefit by a reduction of it. It being admitted that nine annual premiums were duly and fully paid, the loan value next opposite the figure 9 must control in estimating the extension

period, as we have already shown. The result would be that the policy was in force when the assured died, but this is conclusively so when we hold, as we do, that in estimating the amount of the indebtedness the note for $150 should not be counted. It was not a lien on the policy, and the latter provides: "Tables A and B of nonforfeiture values on the margin of this page show the guaranteed values of this policy corresponding to the number of years for which full annual premiums have been paid, and in the event of any indebtedness *against this policy* these values will be reduced proportionately." This clause, especially the latter part of it, plainly shows that only indebtedness secured by an assignment of the policy shall be considered. The note of $150 was not "a debt against the policy," as contemplated by that provision.

We must not overlook the fact that, in construing a policy for the purpose of ascertaining its legal effect, the contract is expressed in language elected by the company for its purpose, and therefore that all doubts as to its meaning should be resolved in favor of the assured. *Bray v. Ins. Co.,* 139 N. C., 390; *Rayburn v. Casualty Co.,* 138 N. C., 379, 382; *Arnold v. Ins. Co.,* 152 N. C., 232; 14 Ruling Case Law, p. 226; *Grabbs v. Ins. Co.,* 125 N. C., 389, and *Bank v. Ins. Co.,* 95 U. S., 673. This Court said in *Bray v. Ins. Co., supra:* "If the clause in question is ambiguously worded, so that there is an uncertainty as to its right interpretation, or if for any reason there is doubt in our minds concerning its true meaning, we should construe it rather against the defendant, who was its author, than against the plaintiffs, and any such doubt should be resolved in favor of the latter, giving, of course, legal effect to the intention, if it can be ascertained, although it may have been imperfectly or obscurely expressed. This is the rule to be adopted for our guidance in all such cases, and one reason, at least, for it, is that the company has had the time and opportunity, with a view to its own interests, to make clear its meaning, by selecting with care and precision language fit to convey it, and if it has failed to do so, the consequences of its failure should not even be shared by the assured, so as to deprive him of the benefit of the contract, as one of indemnity for his loss," citing *Grabbs v. Ins. Co.,* 125 N. C., 389. In applying this just and salutary rule, *Justice Harlan,* in *First National Bank of Kansas v. The Hartford Fire Ins. Co.,* 95 U. S., 673, 679 (24 L. Ed., 563, at 565), thus tersely and strongly restated the rule with reasons for it: "When a policy of insurance contains contradictory provisions, or has been so framed as to leave room for construction, rendering it doubtful whether the parties intended the exact truth of the applicant's statements to be a condition precedent to any binding contract, the court should lean against that construction which imposes upon the assured the obligations of a warranty. The company cannot justly complain of such a

rule. Its attorneys, officers, or agents prepared the policy for the purpose, we shall assume, both of protecting the company against fraud and of securing the just rights of the assured under a valid contract of insurance. It is its language which the court is invited to interpret, and it is both reasonable and just that its own words should be construed most strongly against itself." The rule is very pertinent here, as to the several questions raised. But we entertain no doubt, without the aid of the rule, as to what the parties meant when they entered into this contract, and especially in regard to the extension clause.

It is not necessary to consider the point as to the application of the unearned interest to the debt of ($779) which is chargeable against the policy, thereby reducing it, as we are of the opinion that without making such use of it the policy had not expired at the death of the assured, but was still in force.

The case was admirably argued by both sides, and we are indebted to the learned counsel who appeared before us (Mr. Kelly and Mr. Hines) for having made easier our task in unraveling an apparently complex and intricate case by their very enlightening argument.

We have reached the conclusion that the note for $150 should be omitted from the account in ascertaining the period for the extension of the insurance under Table A, and the stipulation in the policy explanatory of it, which provides for the proportioned reduction of the policy value by the existing indebtedness. And further, that the loan value was $1,010 instead of $875. These two conclusions carry the policy beyond the death of the assured, and entitle plaintiff to recover upon it. We are also inclined to the opinion that the amount of the unearned interest should also be deducted, but it is not necessary to decide that question in view of our other holdings, and therefore leave it open.

We are of opinion that Judge Shaw gave the correct judgment, and it must be so certified.

Affirmed.