## BURNS v. BANKERS' LIFE CO.

District Court, W. D. Texas, Austin Division.
March 6, 1928.

No. 1087..

1. **Insurance** ⚖➞144(1)—**Premium extension agreements held not to alter forfeiture provisions in policy.** ·

Agreements for extension of time for payment of premiums *held* to refer to premiums only, and not to alter or change forfeiture provisions of policy.

2. **Insurance** ⚖➞365(1)—**Premium extensions and reinstatement of policy must be taken together, in determining insurance company's liability after default, where payment or reinstatement of indebtedness was necessary to reinstate policy.**

Writings by which insurance company reinstated policy and extended time for payment of premium must be considered as a whole, and reinstatement of policy and indebtedness taken together in determining liability of insurance company on policy after death of insured, who defaulted, where policy required either payment of premium or reinstatement of indebtedness on reinstating policy.

3. **Insurance** ⚖➞367(1)—**As respects term insurance, forfeiture date for nonpayment of premium held not deferred after reinstatement of life policy and expiration of extension agreements.**

Insurance company's reinstatement of life policy and extension of time for payment of past-due premiums *held* not to defer date of forfeiture, for purpose of determining when term insurance extension commenced to ·run, where premiums were not paid within extension of time allowed, and extension agreements provided that in such case rights under the policy and extension of time for payment of had been made.

4. **Insurance** ⚖➞367(1)—**Extension in life policy of time for electing nonforfeiture options held applicable to so-called option by which cash surrender value was automatically applied to purchase of extended insurance.**

Provision in life policy that "the time for electing any option" to avoid forfeiture on lapse of policy should run from extended date of premium *held* applicable to right granted insured, under designation of option, to apply cash surrender value to purchase of extended insurance, though such right was automatically secured by policy terms in case of default, and no election of any sort was required on part of insured.

5. **Insurance** ⚖➞146(3)—**Insurance contracts are construed most strongly in insured's favor, especially after insured's death.**

·If there is any doubt as to the meaning and effect intended to be conveyed by the written language·used in insurance policy, doubt will be resolved in, favor of insured and against the insurer, especially where forfeiture is involved; and rule is strictly applied in case of life insurance after insured's death.

6. **Insurance** ⚖➞146(3)—**Forfeitures under insurance policies are not favored.**

Law does not favor forfeitures of rights under insurance policies.

7. **Insurance** ⚖➞366—**Failure to affirmatively select any of nonforfeiture options of life policy within time allowed for selecting two of the three options held equivalent to affirmative selection of third option, which applied automatically.**

Provision in policy that time for electing options on lapse, under nonforfeiture provisions should run from extended date of premiums, *held* not to require affirmative act of selection on part of insured within any particular time, where two of the three options allowed a certain number of days within which to elect, since under such circumstances failure to elect either of those two options would amount to selection of third option, which applied automatically.

8. **Insurance** ⚖➞367(1)—**Term insurance under automatic nonforfeiture provision, designated option, held deferred to extended date of premiums under life policy extending time for electing options.**

In action on life policy, provision of policy that "the time for electing any option" on lapse of policy should ·run from the extended date, and not from the due date of the premiums, *held* to defer time when term insurance commenced to run to extend premium date, where one of three options of policy provided for application of cash surrender value to purchase of extended insurance, notwithstanding such insurance was given automatically on default in payment of premium.

9. **Insurance** ⚖➞146(3)—**Policy ·containing inconsistent provisions, or fairly open to construction, should be sustained, if possible.**

If policies of insurance contain inconsistent provisions or are so framed as to be fairly open to construction, that view should be adopted, if possible, which will sustain the contract.

At Law.    Action by Malinda Burns against the Bankers' Life Company, submitted on a stipulation of facts.    Judgment for plaintiff.

W. C. Wofford, of Taylor, Tex., and J. H. Hart, J. M. Patterson, W. D. Hart, and Hart, Patterson & Hart, all of Austin, Tex., for plaintiff.

C. L. Black, Ireland Graves, and Black & Graves, all of Austin, Tex., for defendant.

WEST, District Judge.    The case is submitted upon an agreed stipulation as to the governing facts.    This memoranda will not contain the exact words of the stipulation, except to insure clarity.

Plaintiff contends that the lapse or forfeiture of the policy was caused by the failure of the insured to pay premium due September 25, 1924.    Defendant contends that the maturity date of this same premi-

um was November 25, 1923. The insured died April 13, 1925. On that date the annual premium due on November 25, 1923, was, and still is, unpaid. If the forfeiture occurred on that date, the then cash surrender value—$58.09—was sufficient to extend the term insurance for 1 year and 73 days thereafter; that is, to February 6, 1925, *prior* to insured's death, therefore no liability. If lapse or forfeiture occurred on September 25, 1924, the cash surrender value at that time would be sufficient to extend the term insurance *to a time subsequent* to the date of the insured's death, thereby fixing liability. Plaintiff replies that the due date of the defaulted premium was extended by reinstatements of the policy and by agreements providing that payment be made on September 25, 1924; consequently the policy was in force at the time of the insured's death.

Under what terms was the policy reinstated, and the time of the premium payment extended to September 25, 1924? That query must be answered by the written agreements of the parties. Reciting in chronological order, after the forfeiture incurred November 25, 1923:

January 21, 1924. Application for premium extension to March 25, 1924.

January 31, 1924. Original application for reinstatement of lapsed policy.

February 6, 1924. Agreement extending due date of premium to March 25, 1924.

February 7, 1924. Reinstated. This is shown by a rubber stamp impression on the face of the original application, as pursuant to the application.

March 31, 1924. Application for premium extension.

April 7, 1924. Original application for reinstatement.

April 28, 1924. Reinstated. This is shown by rubber stamp impression on the face of the original application, as pursuant to the application.

April 28, 1924. Premium extension agreement renewal. This renewal of premium extension agreement declares that it is pursuant to the premium extension agreement of February 6, 1924, and extends the due date of premium to September 25, 1924.

December 12, 1924. Copy of defendant's letter to insured, advising forfeiture of policy for nonpayment of premium due September 25, 1924, and that the extended term insurance will expire January 6, 1925.

The plaintiff argues that the reinstatement of the policy had the effect of restoring policy to full vitality, and of extending the right of automatic forfeiture to a corres-

ponding new due date of premium; that the premium extension agreement and its renewal by their terms fixed new and different dates of maturity of the premium from November 25, 1923, to March 25, 1924, and to September 25, 1924; that the automatic forfeiture incurred November 25, 1923, was extended by the reinstatement of the policy, and that the date from which to compute the extended term insurance was thus fixed as September 25, 1924.

The premium extension agreement was made February 6, 1924, to extend the due date of the premium which had been delinquent since November 25, 1923. This agreement deferred the payment of the premium and continued the insurance in force until March 25, 1924. Again the insured defaulted. This extension agreement provided, in the event of default, that "after such extended date all rights under the policy shall be the same as if the agreement had not been made." What was the status at and prior to February 6, 1924, the date of the agreement? It was that the insured had continued in default in payment of his premium since November 25, 1923; that automatically his policy had become forfeited, and his term insurance then commenced to run from that date.

That status remained until April 28, 1924, at which time the premium extension agreement renewal was made, which brought about the extension of the due date of the premium, delinquent since November 25, 1923, and deferred the payment of such premium and continued the insurance in force until September 25, 1924. The insured again defaulted. This renewal agreement stated that it was "pursuant to your request the extended period fixed by the premium extension agreement, dated February 6, 1924, is hereby extended to September 25, 1924," and also provided upon default, "after such extended date, all rights under the policy should remain the same as if the agreement had not been made." What was the status at and prior to April 28, 1924? It was that the insured had continued in default in the payment of his premium since November 25, 1923.

[1] What is the effect of the reinstatement of the policy in the light of the contemporaneous agreements to extend the time of the payment of the premium? The premium extension agreements refer to *premiums* and do not serve to alter or change forfeiture provisions in the policy. There can be no policy contract of insurance without the payment of premiums. If the automatic forfeiture of the policy operative in November, 1923, is

to be rescinded, such rescission must be found within the terms of the applications for reinstatement and in the words granting such reinstatement. The two applications in substance state that, because of the lapse of the policy, insured applied to have "the same restored, and for the purpose of being reinstated does declare" that insured is in good health and that such declarations "are the consideration for, any reinstatement made hereon."

Responsive thereto, reinstatement is evidenced informally by rubber stamped lettering impressed on the original application, giving date of the reinstatement, and that it was made pursuant to insured's application. These applications and declarations of reinstatement do not show any definite intention to waive the automatic forfeiture of the policy occurring on November 23, 1923, nor does the plaintiff argue that it so appears from the language or words used. Plaintiff stands upon the effect of the premium extension agreements, and the orders of reinstatement considered as independent and separate instruments.

[2] The chronology of the reinstatement of the policy and the premium extension agreement and its renewal show that each was an essential component of the other. This is made certain by the reinstatement clause in the policy following: The policy " * * * may be reinstated upon presentation at the home office of evidence of the insurability of the insured satisfactory to and approved by the company, *and* the payment of all premium arrears, with interest thereon at the rate of 6 per cent. per annum, *and* payment *or* reinstatement of any indebtedness. * * * " The policy could not have been reinstated without either the payment of defaulted premiums, or a reinstatement of any indebtedness existing at the time of such default, *except* by payment of existing indebtedness, or a provision extending its time of payment; nor could the policy have been reinstated *alone* upon an agreement to extend the due date of defaulted premiums, without doing violence to expressed conditions of the reinstatement clause in the policy.

To comply with the letter and spirit of this clause, it was necessary that reinstatement of policy and indebtedness must occur contemporaneously. The effect of the dual action must be estimated as a single transaction, and as representing a studied effort to comply with policy requirements. The several writings must be considered as a whole. The keynote of the reinstatement clause is that the indebtedness due the company by defaulted premiums, or otherwise, must be paid or provided for, else the policy expires. The effect of the reinstatement of the policy and the premium extension agreement and renewal is to continue the policy in force until the premium extension date, but nevertheless conditioned that the premium due November 25, 1923, and as extended, should be paid. On September 25, 1924, the premium was *not* paid. By the terms of the extension agreements "all rights under the policy shall be the same as if the agreement and deposit had never been made." The chronology demonstrates that at that time—April 28, 1924—the insured had continued in default in payment of his premium since November 25, 1923.

[3] From the foregoing it results that the effect of the reinstatement of the policy *and* the agreements extending time within which to pay defaulted premiums was that the insured had continued in default in the payment of his premium since November 25, 1923, and that the term insurance commenced to run from that date, unless the right to have term insurance run from September 25, 1924, was granted the insured in the exception clause now to be noted.

[4] The plaintiff contends that such extension of term insurance is found in the "excepting" clause of the agreements of premium due date extension and renewal following: "Except that *the time for electing any option* upon lapse granted by the policy shall begin to run from the extended date, and not from the due date of the premium, and except that no further grace period shall be allowed for the payment." The options referred to are listed in the policy under its "Nonforfeiture Provisions," styled options. Three provisions are found: (A) "By applying the then cash surrender value to the purchase of extended insurance;" (B) "paid-up insurance;" or (C) "to the payment of cash at surrender value." Defendant contends that under the so-called option A is the provision for automatic insurance, to be extended from the date of default in premium payment; that, since no election of any sort is required of the insured to obtain a right already secured automatically by the policy terms, *"the time for election of any option"* could have no application to rights granted him under so-called option A; that, options B and C never having been exercised, the exception that term insurance be extended from due date of premium—September 25, 1924—is therefore without application.

[5, 6] The nonforfeiture clause definitely declares that, without action on the insured's part, he is granted extended term insurance from the day of default in premium. This is provision A, though referred to in the policy as being the first of three so-called "options." The meaning of the words used show that a valuable right is automatically conceded the insured on default of premium—that of extended term insurance from that date. To hold that because option A is not an option, and that the exception clause does not apply to *option* A, and therefore does not have the effect of extending term insurance from September 25, 1924, but from the day of actual default in payment of premium—November 25, 1923—would be to deny insured his "right" because it was mislabeled. This would be contrary to rules of law applicable to the interpretation of contracts of insurance: That, if there be doubt as to the meaning and effect intended to be conveyed by the written language used, such doubt will be resolved in favor of the insured, which, after the death of the insured, should be strictly applied; and another rule, that the law does not favor forfeitures.

[7] The defendant argues that an affirmative act of selection on the part of the insured must be made under the nonforfeiture provisions, called "options," within *the time* mentioned, before any one of them could come within the meaning of the excepting clause. The sounder argument is to take the broader view that the three nonforfeiture provisions should be referred to generally as "rights," thereby including all rights, whether conditional rights, such as options, as well as others. These three rights are alternative, created by a lapse or forfeiture of the policy for nonpayment of premium. In two of these, B and C, insured is allowed a certain number of days within which to indicate his choice. In the first—A—his preference is already indicated, the terms of the policy allowing automatic extended term insurance. The order of time of his selection of all three rights is 30 days from the day of default as to B, and 31 days as to C, unless, before that time, he elected to stand on the right granted him by the policy for automatic extended insurance. Such an election would constitute a waiver of the other two just as effectively as if he, by negative action, permitted the time limit as to B and C to expire. There is no provision that requires the insured to make an election of rights given by A *prior* to the time within which he must exercise his rights as to B and C. The effect of this is to automatically give insured 31 days within which to render certain which of the three alternative rights are to become effective. If he makes no *affirmative* election as to any of these options, then he may rely upon the negative "election" distinctly granted by the policy. This would be a "time for electing any option upon lapse, granted by the policy," within the meaning of the excepting clause.

[8] The interpretation of the three nonforfeiture provisions declared in the policy as excluding the right of the extension of automatic insurance is too narrow a view; too uncertain upon which to impose forfeiture of the policy, by denying the benefit of the provisions of the excepting clause, which would continue his policy beyond the date of insured's death. From the foregoing conclusions *the court will give effect* to the exception clause of the premium extension agreement and renewal, and finds that the plaintiff is entitled to judgment. Insured failed to exercise either of the optional rights, B and C, and made no other application for reinstatement or for premium extension. His death occurred April 13, 1925. The extended term insurance began to run from the due date of the premium, as extended—September 25, 1924—to a period of time represented by the cash surrender value of the policy on that date. Such extension will carry the insurance to a date later than that of insured's death. From the terms of the policy the computations can be made.

This memorandum leaves out of the question the admirable discussion of the authorities brought to bear upon the legal questions arising from the facts. A careful consideration of the arguments and briefs presented lead to the conclusion that the law of this case is ruled by the authorities relied on by plaintiff, notably Morgan v. Inter-Southern Life Insurance Co., 221 Ky. 582, 299 S. W. 186 (the Court of Appeals of Kentucky), and State Mutual Life Insurance Co. v. Rosenberry (Tex. Com. App.) 213 S. W. 245. The governing facts in these cases are the same as in this case, except there is no definite clause declaring that term insurance is extended from the due date extension of the premium.

If the meaning of the nonforfeiture and premium extension provisions is in doubt, the following rules would govern:

Insurance contracts are to be most strongly construed against the insurer and in favor of the insured, especially where a forfeiture is involved, so that indemnity will be granted rather than denied. Volume 14, § 103, Ruling Case Law, p. 926. The supporting

citations are of cases from the United States Supreme Court and from the highest courts of every state. And they should be strictly applied in the case of life insurance after the death of insured. 37 Corpus Juris, § 87, p. 408.

[9] If policies of insurance contain inconsistent provisions, or are so framed as to be fairly open to construction, that view should be adopted, if possible, which will sustain rather than forfeit the contract. McMaster v. New York Life Ins. Co., 183 U. S. 40, 22 S. Ct. 10, 46 L. Ed. 64.

There is no difference between the parties concerning the established rules of construction and principles of law guiding the court's action. The real issue turns upon the effect of the exception in the premium extension clause, and of the three nonforfeiture alternative rights or option clauses, A, B, and C. The weight of reason and authority is sought to be demonstrated by cases in point and those in close analogy. The defendant insists that the facts in this case and the law questions decided are so nearly like the cases on which it relies as to be determinative of the issues here in its favor. They are White v. New York Life Ins. Co., 200 Mass. 510, 86 N. E. 928; Holly v. Metropolitan Life Ins. Co., 105 N. Y. 437, 11 N. E. 507; Underwood v. Jefferson L. Co., 177 N. C. 327, 98 S. E. 832; Union Mutual Life v. Adler, 38 Ind. App. 530, 73 N. E. 835, 75 N. E. 1088; and Eddie v. New York Life, 75 Cal. App. 199, 242 P. 501.

From a close study of these cases and a nice balancing of their weight with the cases upon which plaintiff relies, notably, Morgan v. Inter-Southern Life Insurance Co., 221 Ky. 582, 299 S. W. 186, the Supreme Court of Kentucky, and State Mutual Life Insurance Co. v. Rosenberry, 213 S. W. 245, supra, the court finds that defendant's authorities are not in point, or so nearly analogous as to control the law of this case. The facts in cases cited by defendant very closely parallel the facts here, but the distinctive difference is this: In none of them is it provided that, upon default in payment of premium, the term insurance shall take effect at the extended due date of the premium, instead of the original due date, as in this case by the *exception* clause. Accordingly, plaintiff is entitled to recover the face value of the policy as it existed at the date of the insured's death.

Article 4736 of the Texas Revised Statutes of 1925 provides: "In all cases where a loss occurs and the life insurance company * * * liable therefor shall fail to pay the same within thirty days after demand therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of the loss, twelve per cent. damages on the amount of such loss together with reasonable attorney fees for the prosecution and collection of such loss." In conformity with the prayer of the petition, the penalty of 12 per cent. damages is awarded, and also attorney's fee in the sum of $2,000, of which sum $1,500 is allowed to cover all attorney's services including this trial. An additional $500 is awarded to cover attorney's services to be rendered in the event of an appeal from this judgment. Plaintiff is also entitled to all costs incurred.

A final judgment conforming to the provisions hereof will be entered in due course.