## Maddox, et al. v. Mutual Life Insurance Company of New York.

### (Decided November 25, 1921.)

### Appeal from Franklin Circuit Court.

1. Insurance—Paper Attached to Policy for Illustration.—A paper called "Adapted Illustration," which the agent of a life insurance company exhibited to the insured at the time the policy was so-

licited, and which was attached to the policy when delivered, becomes a part of it, and the promises and agreements therein contained are obligatory on the parties. The "Adapted Illustration" contained a definite amount in figures as representing the surplus to which the insured would be entitled to be paid in cash at the end of the deferred dividend period of his policy if kept alive till that time, but stated that the figures were based only on "former policy results;" and it was stated in vertical lines across the "Illustration" that the figures representing the surplus "are to be understood as a sum adapted for purposes of general illustration only, and to be based on actual experience in policy results of the past, and not as pledged hereby in future settlements." Plaintiff did not refuse to accept the policy unless the amount so represented was guaranteed, nor did he testify that he was deceived into accepting the policy upon the agreement that the specific sum would be paid as surplus, nor does he deny that he did not know that it was only a representation of the company's past experience with deferred dividend policies. Held, that there was no absolute contract on the part of the company that the sum so represented would be the accumulated surplus on the policy when matured.

2. Insurance—Contracts—Construction.—Insurance contracts are to be construed by the same rules as other contracts; i. e., words are to be given their usual and ordinary meaning and all parts of the contract are to be considered, and the intention of the parties as thus gathered will be enforced; but, if the contract when so construed is ambiguous and susceptible of two constructions, the one more favorable to the insured will be adopted.

3. Insurance—"Adapted Illustration"—Surplus.—If the figures representing the surplus in the "Adapted Illustration" were not the result of the actual experience of the company in past policy results, and were thereby false, it would perhaps be estopped to deny their falsity or to question the correctness of the amount represented; but if they conform to the past experience of the company covering a period equal to that of the policy in which they are stated, they are not binding upon the company under any contractual or guaranteed obligation.

4. Insurance—Deferred Dividend Policies.—In making up the period of its past experience as to the results of deferred dividend policies, the company may take into consideration a period covered by other classes of deferred dividend policies from the one in which the representation is made; provided the deferred dividend policies of the class considered were calculated upon the same basis and governed by the same conditions during their respective periods as was the policy to be issued and in the issuance of which the representations were made.

5. Insurance—Deferred Dividend Policies—Accounting of Earnings.—In an action by the holder of a deferred dividend policy in a mutual company, for an accounting and apportionment of earnings, the following method of apportionment made by the company,

at the end of a class period of accumulation, is approved: (a) Apply to each class, not the mortality experience of that "class" within itself but the average mortality experienced of the company's experience among all of its deferred dividend policy holders; (b) charge the policies of the "class" with their proportionate share of the company's expenses; (c) credit the "class" with interest at the average rate earned by the company on all its funds; and (d) apply the average rate of lapses and surrenders prevailing among all holders of policies issued upon the same plan.

HOBSON & HOBSON and FORMAN & FORMAN for appellants.

FREDERICK L. ALLEN, CHARLES S. GRUBBS and WILLIAM MARSHALL BULLITT for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On February 13, 1897 the appellee and defendant below, Mutual Life Insurance Company of New York, issued to the appellant and plaintiff below, J. H. Maddox, a policy of insurance on his life which was denominated, "Five Per Cent Gold Twenty-Year Bond Policy," by which defendant agreed to pay to the executors, administrators or assigns of the insured, if he died within twenty years thereafter, ten five per cent gold bonds payable twenty years from date with interest payable semi-annually, but the policy was subject to the conditions and agreements endorsed on its back and was what is known as a "Twenty-Year Deferred Dividend Policy." One of the endorsements thereon, which was referred and made a part of the contract, provided that if the contract was in force at the expiration of twenty years from its date "it will be credited with such share of distributed surplus as may then be computed by the company, and it shall not be entitled to any such credit at any previous time." It was further agreed on the back of the policy that "At the end of the first distribution period as above provided (twenty years), this contract may be surrendered to the company, and the four per cent reserve computed by the American table of mortality, together with the surplus as defined above, will be paid therefor to the insured as he may elect." Three options are then provided for; the first of which is the payment in gold coin of the surplus and reserve referred to in the last quotation.

At the time the policy was solicited there was exhibited to plaintiff a leaflet called "Adapted Illustration," which was attached to the policy at the time it was deliv-

ered to and accepted by him.    Omitting the heading, which contains nothing material to the issues in this case, it says:

PRINCIPAL SUM, $10,000.00.

OPTIONS AT THE END OF 20 YEARS,

If insured be then living.

J. H. S.

ADAPTION.

A. 1. $5,557.19
    Reserve  Guaranteed

  2. $10,247
    Former Policy Results.

  3. $15,804.19
    Reserve and Former Results.

    Equivalents for Reserve and Former Results.

B. 3. $15,804.19
    At Death, and

  8. $553.14
    Life Income.

  5. $23,188
C.    At Death.

  2. $10,247
D.    Former Results, or

  7. $1,422.33
    Life Income, and

    $10,000
    AT DEATH.

E. 6. $2,193.79
    Life Income.

The surplus portion, i. e., former results ($10,247), added to the reserve value or incorporated with the equivalent options in this example is to be understood as a sum adapted for purposes of general illustration only, and to be based on actual experience in policy results of the past, and not as pledged hereby in future settlements.

FORM OF OPTIONS.

"A"

To draw in gold coin the reserve as stated, together with the surplus results which may be apportioned.

OR "B"

To continue the sum of the reserve and accumulated surplus results which may be apportioned, as paid-up participating insurance, payable at death, and draw an annual income for life of 3½ per cent of the total amount.

OR "C"

To convert the surplus results which may be apportioned into paid-up participating insurance, payable, in case of death, in gold coin only, and continue the principal sum payable at death in Bonds by payment of the original premium only.

OR "D"

To draw the surplus results which may be apportioned, in gold coin, or as an equivalent life income, and continue original insurance, participating in dividends, by payment of original premium.

OR "E"

To buy a one-year deferred income with the total reserve and the surplus results which may be apportioned.

Across the heading of the Illustration were stamped these words: "The accompanying figures are correct as an illustration adopted from the the past experience of the company.  W. J. Easton, Secty."

Plaintiff survived the twenty-year policy period and paid the last annual premium amounting to $582.90 on February 13, 1916. On the 25th day of March, 1897, the policy with the consent of the company was assigned by the insured to his children "share and share alike." The beneficiaries under it elected to exercise option "A" on the "Adapted Illustration," and to accept the cash value of the *reserve* and the surplus due upon the policy, and they brought this action on March 20, 1917, against defendant to recover of it $15,804.19, which they alleged ,was the total amount of the reserve ($5,557.19) and the surplus ($10,247.00), to which they were entitled under what they alleged was the contract as contained in the "Adapted Illustration."

The right to the recovery is bottomed in the petition on two grounds, (1), that, according to an equitable, fair and just settlement, the "surplus" due to the policy sued on amounted to $10,247.00, as stated in the "Adapted Illustration," and (2), that, whether so or not, the "Adapted Illustration" was an obligatory contract on the part of the defendant that the "surplus" due to the policy would amount to that sum at the expiration of the twenty year period. It is admitted by both parties that the "reserve" to which the policy was entitled upon the payment of the last premium was $5,557.19; so that the only item about which there is any controversy is the one representing the amount of *surplus* to which the beneficiaries are entitled under the option which they elected to exercise. The answer denied both grounds and set out, at great length, the method by which "surplus" due to policyholders is accumulated by the company in which they are insured, and stated that, according to that method, which it was alleged was equitable and just and the one adopted by defendant, the amount of surplus due to the policy sued on was only $4,818.93, which, added to the guaranteed reserve of $5,557.19, made a total sum of $10,376.12, which sum it tendered into court in full settlement of the amount due under the option which plaintiffs had elected to exercise. It also alleged that if the "Adapted Illustration" had the binding contractual effect, as contended by plaintiffs, it was violative of the provisions of section 656 of the Kentucky Statutes, and of a similar statute in New York, the home of defendant, and was, therefore, against public policy and void. There was also a plea of limitations in answer to that part of the petition alleging fraud in the representations

made in the "Adapted Illustration," since it was therein
alleged that "the accompanying figures are correct as an
illustration adopted from the past experience of the com-
pany," as signed by its secretary, was false and intended
to deceive the insured at the time he contracted for and
accepted the policy. The tender of $10,376.12 was paid
to and accepted by plaintiffs, but without prejudice to
their right to prosecute the action to recover the bal-
ance claimed to be due them. Appropriate pleadings
made the issues, and upon trial the case was submitted to
the court, and tried as an equity action, upon extensive
proof taken by depositions, and judgment was rendered
dismissing the petition, to reverse which plaintiffs prose-
cute this appeal.

It is manifest that ground (1), relied on for a recov-
ery, embraces similar contentions to those made in the
case of Miller v. New York Life Ins. Co., 179 Ky. 246, and
ground (2), also relied on, is based upon the principles
announced in the case of Forman v. Mutual Life Ins. Co.,
173 Ky. 547, which counsel for plaintiffs insist are decis-
ive of this case, since it is claimed the facts, as contained
in the two cases, are substantially analogous.

Before entering into a discussion of or a determina-
tion of the respective contentions we deem it proper to
take a brief notice of what constitutes the "reserve" and
the "surplus" due to insurance policies of the character
and kind involved here. In fixing the net premium to be
paid by the policyholder, two facts are assumed; one, that
the policyholders at each age will die precisely so many
each year, no more and no less, which estimate is made
on some specified mortality table such as the American
experience table, and that the company will earn on the
calculated premium the specified rate of interest as-
sumed, which in this case was four per cent. If the facts
assumed as a basis for that calculation would always
prove to be exactly true, there would never be any excess
above the accumulations of the net premiums according
to those calculations and which calculated premiums con-
stitute the "reserve." But, the net premium is in-
creased by fixing the amount of it above the exact calcu-
lations for reserve accumulation, so as to provide for ex-
penses, taxes, agents' commissions, idle money, lower
rates of interest than assumed in the calculation, excess
death losses because of epidemics, and perhaps other
contingencies, and in order to provide for all of them an
arbitrary amount is added to the exact cost calculation

(the "reserve"), which addition is called in insurance parlance "loading" of the premium; and that amount is fixed according to past experience in dealing with the contingencies as nearly accurate as possible. It frequently happens, however, that more than the interest rate calculated on is earned, and fluctuations in expenses, taxes and other factors of the calculation may reduce those items below their estimate in the "loading," while deaths of policyholders by careful medical examination may not occur as early as calculated in fixing the net premium. Again, some policies may lapse and surviving policies get the benefit of surplus due to the lapsed ones, and from these various sources and uncertain factors the "surplus" to which a policy is entitled is derived. From this brief statement it will at once appear that no exact calculation can be made of the amount of *surplus* due in the future to a particular policy. The best that can be done is to gauge future results by the past experience of the company, and if conditions throughout the future period prove to be the same as those for a similar period in the past an approximate calculation of the surplus might be made.

Dividend policies are of different classes, some of them allow, by agreement, a distribution of the dividend annually and they are called Annual Dividend Policies; while others defer the right to appropriate the dividend or surplus to an agreed period, some five years, some ten years, some fifteen years, and others twenty years, as was agreed in the policy sued on herein, and they are called "Deferred Dividend Policies." In deferred dividend policies it is usually stipulated that the insured is not entitled to any part of the surplus, or dividend, until the expiration of his dividend period, whatever that may be, and if he dies and his policy should be paid within that time the accumulated surplus or dividends accumulated on his policy is lost and goes to augment the dividend fund to be applied to other policies of that class, which survive the dividend period. The same result is sometimes true with reference to lapsed or surrendered policies, but that source of augmentation of the surplus has been largely curtailed in later years by statutory provisions for paid-up insurance.

With these briefly stated and general preliminary observations we will now return to a consideration of the two grounds upon which a recovery is sought; and in disposing of them we have concluded not to enter into de-

tails concerning the evidence, since it is of an exceedingly complicated nature and its recitation and detailed consideration belongs more to a thesis on the scientific method of conducting life insurance, rather than a place in a court opinion involving only an issue of fact between litigants.

1. The Maddox policy belonged to a small separate class or group of policies, eight in number, which were alike as to the age of the insured, the kind of policy and the amount of premium paid, as well as year of issuance. By a series of calculations involving intricate actuarial figures in which the factors hereinbefore mentioned were considered, it was determined what the actual annual dividend scale, according to the experience of the company, for dividend policies each year on each one thousand dollars insurance, and each policy of the class to which Maddox's belonged received its proper application or apportionment of the amount of surplus so calculated on each one thousand dollars of insurance held, and such annual dividends were set aside and put at compound interest until the arrival of the full dividend period of his policy and the amount of surplus due to it at that time, under the calculation so made, was $4,818.93, the amount tendered and acknowledged to be due by defendant. Such classification was approved by this court in the Miller case, in which it was also held, that the calculation of the amount of surplus due to the policy there involved, and the company's method of arriving at it, were just and equitable to the policyholder. The only difference between the method there involved and the one applied here is that defendant in that case waited until the expiration of the deferred dividend period to apply its average experience to the various classes or groups of policies, while in this case the defendant made its calculations each year and applied its average ratios to the classes or groups each year. We can see no material difference between the two methods employed. Each of them gives to the policyholder, entitled to participate in the surplus at any period under the provisions of his policy, the full benefit of all of the factors and elements entering into the accumulation of the surplus, and each of them invests the accumulated surplus at compound interest, and there has not been pointed out to us any substantial difference whereby the method employed by defendant in this case would result in the accumulation of any less surplus than the one employed in the Miller case. That the calculations on the Maddox policy were correctly made in accordance

with the above method is abundantly established by the testimony, and, indeed, does not seem to be seriously questioned, since the chief contention on this appeal, as we gather it from appellant's brief, concerns the action of the court in denying ground (2), relied on for a reversal.   But, whether correct as to the effect of the testimony or not, we think it is sufficient to leave no room for discussion concerning the propriety of the finding of the court that ground (1) was not proven.   On the contrary, we are convinced that defendant computed the surplus due to the Maddox policy, not only upon a sound equitable basis, but that there was allotted to it and tendered into court all of the surplus that was due under the policy sued on, unless ground (2) is upheld.

2.   Under this ground it is insisted (a), that the "Adapted Illustration," which it is conceded became a part of the contract, unequivocally bound and obligated the defendant by the agreement, which it is alleged to contain, to pay Maddox at the end of the twenty-year dividend period which his policy was to run, should he elect to accept its then cash value, not only the *guaranteed* "reserve," but likewise the sum of $10,247.00 as the *agreed surplus* due thereon; or if not, (b) that the Illustration guaranteed, and thereby created a contractual obligation that the sum mentioned as surplus was that which would be due on the Maddox policy, according to defendant's "actual experience in policy results of the past," when, as alleged, it had no such experience, and the statement with reference thereto was false and it is now estopped to deny its falsity.

That contention (a), can not be true is shown on the face of the Illustration by the statement that the item of $10,247.00, placed therein, as estimated surplus, "is to be understood as a sum adapted for the purposes of general illustration only  .  .  .  and not as pledged hereby in future settlements."   The quoted statements form as much a part of the entire Illustration as does anything else contained in it, and there is nothing appearing in the case creating any equity in plaintiffs which would authorize us to disregard them.   We have not overlooked the fact that in the Forman case the heading of the illustration contained a similar, but less prominent and less emphasized statement, but the insured in that case, according to his testimony, which was fortified by the agent who solicited his policy, demanded that the sum represented as the accumulated surplus on his policy should be *guar-*

*anteed* by the company, and according to the· testimony in that case he refused to take out or accept the policy without such guaranty.    The insured in this case made no such demand at the time of procuring his policy; nor does he say that he took it relying on obtaining the specific sum mentioned in the Illustration at the end of his policy period.    He does say that "he (the agent) said so many things I don't know whether I could recall all of them or not, but I anticipated that there would be a good deal coming to me or my family at my death, if that should occur before the expiration of the twenty years." He was asked, "Did he (the agent) tell you about the option you would have at the end of the twenty years?" and answered, "There was something said about it that was satisfactory.    I don't remember just how he counted it." He was then asked if he would have taken the policy "but for the option that you understood you were to have to get this money at the end of the twenty years?"    His first answer was "that was my idea," and on the question being repeated he answered, "I would not."    Evidently the last answer, when read in connection with what immediately precedes it, referred to the "good deal coming to me or to my family at my death," because on being asked why he was induced to take the policy he said, "because I thought it was a good investment according to his talk."

But, however this may be, the Illustration involved in the Forman case bore a much greater resemblance to a contractual obligation than is contained in the Illustration involved in this case.    In that case the estimated surplus due the insured at the end of his policy dividend period, and which he sought to recover in the suit under the option which he selected, was put in the Illustration as "$996.06 cash surplus;" while in the Illustration involved in this case the item of $10,247.00 over which the contention arises, is put down as "$10,247.00 former policy results," and it is placed immediately under the item of $5,557.19, which is stated to be "reserve guaranteed." It will thus appear that the deceptive language found in the Forman Illustration is wanting in the Maddox Illustration, since in the latter attention is sharply drawn to the reserve which is "guaranteed," and to the item of surplus immediately thereunder, which purports to be only "former policy results."

Insurance contracts are like all other contracts and should be construed by the same rules, *i. e.,* that where

the language employed in not ambiguous it should be given its ordinary meaning so as to carry out the intention of the parties in making it, and in arriving at that intention all parts of the contract should be considered; but, with reference to insurance contracts, if the language is that employed by the company and is susceptible of two meanings, that one will be adopted which is more favorable to the insured. The language of the Illustration here is not ambiguous at all and is not susceptible of but one meaning, which is precisely the one it says, to the effect that the amount of the surplus inserted in it is *not* guaranteed and is *not* pledged in future settlements, but is used as an example, attached for purposes of general illustration only. Maddox does not claim that he was deceived by that language, and the case really gets down to the proposition, that we are asked to presume, from the disparity between the actual results and the estimated results, that he was deceived, which we feel we are unauthorized to do. We therefore conclude that insistence (a) is not sustained and is without merit.

But, under insistence (b), it is contended that the evidence shows that the statement in the Illustration that the item of $10,247.00 was "based on actual experience in policy results of the past" was false, and defendant having induced Maddox to accept the policy containing that false statement it is now estopped to deny such falsity. Accepting the legal conclusions of counsel as true, we think they are incorrect in assuming that the statement was false. The falsity of that statement is sought to be established from the fact that the defendant in 1897, when the Maddox policy was issued, had not written any twenty-year dividend policies prior to 1886, and that it thus had only ten years' experience with such policies, and, therefore, the statement could not be based on actual past policy experience. It is true that the particular character of deferred dividend policies were not written by defendant prior to 1886, but since 1866 it had issued annual dividend policies and deferred payment policies of five, ten, and fifteen years, each of which was for a period shorter than the Maddox policy, and it therefore had more than twenty years' experience with deferred dividend insurance prior to the issuing of the Maddox policy. And since, as we have seen, one of the accepted methods of calculating the surplus is to ascertain the amount of dividend due to the policy each year, we fail to see wherein the company was not authorized to make the com-

plained of statement, if, as a matter of fact, it accorded with its experience touching dividend policies, or narrowed, if you please, to deferred dividend policies extending over a period of twenty years immediately prior to 1897, when the policy in contest was issued.

If defendant should be confined, as a period upon which to base its past experience, to the ten years immediately preceding the Maddox policy, and estimating the next ten years according to that experience (which it is shown is a most uncertain and unreliable course), it was not justified in making the statement in the Illustration with reference to its past experience; but, when the experience as to dividend policy results for the ten years immediately prior to 1886 is combined with the company's experience as to such results for the succeeding ten years up to 1897, it is clearly shown that the Maddox policy would have earned, according to that experience, slightly more than $10,247.00, the amount stated in the Illustration as being the result of defendant's past policy experience. It is so shown by the testimony of defendant's actuary, and witness Bullock, introduced by plaintiffs, does not contradict the company's actuary on that issue. His testimony only refutes the idea that the surplus would amount to the sum contained in the Illustration if based only on the policy results for the ten years immediately preceding the taking out of the Maddox policy, and does not take into consideration the experience of the company with deferred dividend policies for the ten years prior to that time, and which was necessary to complete the full period of twenty years' experience. If, however, the testimony supporting the accuracy of the statement concerning the company's past experience was less convincing, we have the finding of the court upon that issue and we can safely say that it is not against the preponderance of the testimony with reference thereto. We might add before closing that no such issue, as just discussed, was involved in the Forman case, and this furnishes another material difference between it and this one.

Finding no error prejudicial to plaintiffs' substantial rights, the judgment is affirmed.