## National Life Insurance Company v. Kuykendoll, Administrator.

(Decided December 19, 1924.)

### Appeal from Webster Circuit Court.

Insurance—Provision for Reduction of Extended Insurance Because of Indebtedness Enforceable.—Provision of policy that indebtedness on premium notes shall be deducted from cash value

on default, and amount of extended insurance reduced accordingly, is enforceable, and, in absence of election to accept some other option, insurance continues in force for term specified, but only for amount bearing same proportion to face of policy that difference between cash value and indebtedness bears to specified cash value.

WM. MARSHALL BULLITT, LEO T. WOLFORD and BRUCE, BULLITT & GORDON for appellant.

BOURLAND & BLACKWELL for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON—Reversing.

On March 27, 1906, appellant insurance company, issued its policy for $1,000.00 on the life of Thomas F. Harris, of Free Union, Webster county, in consideration of the premium of $33.31 paid that day and the payment of a like sum annually from that date, his wife, Pheba J. Harris, being beneficiary. She predeceased her husband. He paid the premiums in cash for five successive years and thereafter gave his note to the company for $33.31 each year for five more years. He then ceased to pay his premiums either with money or by note but made no election under the terms of the policy, reading:

"AGREEMENTS, BENEFITS AND PRIVILEGES
NONFORFEITURE.

"(a) Failure to pay any premium, or any part thereof, or any loan or premium note (on account of this policy) or interest thereon, when due, shall cancel the insurance and this contract; if, however, lapse occurs after three full annual premiums have been paid, the company guarantees, at the end of successive policy years, one of the benefits or options of settlement specified in the following table, which are: *First,* without action of the insured, nonparticipating, continued term insurance, for $................for the specified term; or *second,* on application and legal surrender of this policy, within three months, a paid up policy (participating, if for $100.00 or more), or *third,* on application and legal surrender of this policy within three months, a cash value

"TABLE OF CONTINUED AND PAID-UP INSURANCE AND CASH
VALUES.

| At End of | Insurance Continued | | Paid-up Ins. | Cash Values (See Loans) |
|---|---|---|---|---|
| 3rd year | 4 years | 40 days | $102 | $22.37 |
| 5th year | 6 years | 183 days | 169 | 65.85 |
| 10th year | 10 years | 77 days | 325 | 184.01 |
| *** | *** | * ** | ** * | * ** * |
| *** | *** | * ** | ** * | * ** * |

Note:—The same basis on which the above tables are constructed will apply if the policy is continued in force beyond the twentieth year.

(b) Should this policy lapse because of default in the payment of any premium note (on account of this policy) or interest thereon, all indebtedness to this company on account of this policy shall be deducted from its cash value, and the value of the several options specified in the above table shall be correspondingly reduced; in such case, subject to the conditions of section (a) preceding, the company agrees to pay the balance of said value in cash, or to convert it into an equivalent paid-up policy, or, if no election is made by the insured and beneficiary, to convert said balance into continued term insurance of reduced amount but for the full term mentioned in the table."

After he ceased to pay and within six years and 183 days, the time the policy is continued in force after five premium payments, the insured died. Application was made for blanks on which to furnish proof of the death and the company denied liability on the policy save to the extent of $40.59, which it tendered and offered to pay, but which tender was refused by the administrator of the insured. This action was then brought upon the policy to recover its face value subject to credit by the five premium notes of $33.31 each, which the deceased had given but not paid in satisfaction of premiums.

It is the contention of the insurance company that by its policy of insurance issued March 27, 1906, it insured the life of T. F. Harris for $1,000.00, conditioned that if the policy should lapse because of default in the payment of any premium, or of any loan or premium note, all indebtedness on account of the said policy should

be deducted from its cash value, and the values of the several options specified in the table of continued and paid-up insurance and "cash values" should be correspondingly reduced; that in the absence of an election to accept the balance in cash or to convert it into an equivalent paid-up policy, it is provided that the balance of the "cash value," after payment of the indebtedness of the company, shall be converted into continued term insurance of reduced amount, but for the full term mentioned in the table of continued insurance.

The company also insists that the tenth annual premium, which was due March 27, 1916, was not paid, and that the indebtedness of the insured to the company on outstanding premium notes amounted to $176.54. At the end of the tenth year, the options provided in the policy table were as follows:

| Continued Insurance | Paid-up Ins. | Cash Values |
|---|---|---|
| 10 years and 77 days | $325.00 | $184.01 |

And deducting the indebtedness on March 27, 1916, of $176.54 from the cash value of $184.01, leaves a balance of $7.47 for the purchase of continued term insurance for 10 years and 77 days, no election having been made to accept the balance in cash, or to convert it into a paid-up policy. If there had been no indebtedness to the company, the cash value at the end of the tenth year, to-wit, $184.01, if converted into continued term insurance, would have extended the policy at its full face value of $1,000.00 for 10 years and 77 days. But since the balance, after deducting the indebtedness from the cash value, was only $7.47, by the terms of the policy the amount of insurance, which was automatically extended for the full term of 10 years and 77 days, was $40.59. which is the proportion which $7.47 bears to $184.01. In other words, the insurance is continued for the full term, but is reduced in amount in the proportion which the net balance, after deducting the indebtedness, bears to the cash value. The insured died in the fourteenth month after the policy lapsed so that the continued insurance for $40.59 was in effect at the time of his death, so argues the company.

It will be observed, however, that there is an exception to the condition in the policy that the same shall be cancelled upon the failure of the insured to pay a premium or premium note, after three full annual prem-

iums have been paid. The company guarantees at the end of successive policy years, one of the benefits or options of settlement specified in the table contained on the second page of the policy contract. One of these options allows the insured a nonparticipating continued term policy for $1,000.00 for the term specified in the table to which we have referred, if there is no indebtedness; and this option is given the insured without any action or election upon his part. It goes as a matter of course unless the insured indicates he desires the benefit of some other option. In this case the insured Harris did not indicate a preference for any option, therefore brought himself within the clause "Without action of the insured," contained in the policy. He was therefore entitled to a continuance of his policy as a nonparticipating one for the term of six years and 183 days after the payment of the five premiums, and to ten years and 77 days after the payment of ten premiums, as provided in the table set out in the contract. But it must be remembered that the five premium notes were not paid, and were, therefore, an indebtedness against the policy. The contract provides that such indebtedness shall be deducted from the "cash value" of the policy as fixed by the table therein, and the amount of the extended insurance reduced in accordance with the reduction of the "cash value." This contract is enforceable. When construed according to its terms and in the light of the admissions in the pleadings, the amount available for the purchase of extended insurance is the difference between the "cash value" and the indebtedness standing against the policy, which difference was only $7.47, and would buy a continuing term policy for ten years and 77 days, according to the table to which we have referred, for only $40.59. In other words, the five premium notes with interest amount to $176.54. This was an indebtedness against the policy. The "cash value" of the policy at that time was $184.01. Subtract the amount of the indebtedness from the "cash value" and you have $7.47. This sum is all that remains with which to buy term insurance for a period of ten years and 77 days. For such a long term this amount would only be $40.59. See Jagoe v. Aetna Life Insurance Co., 123 Ky. 510.

Appellee relies upon the case of the New York Life Ins. Co. v. Van Meter's Admr., 137 Ky. 4; and the case of Drury's Admrx. v. New York Life Ins. Co., 115 Ky.

681, in support of his insistence. The terms and conditions of the policies in those two case·are very different from the provisions of the policy in the case at bar, and the opinions in those cases are not authoritative in this case.

As the judgment appealed from held appellant company liable for the face of the policy, less the premium note with interest, it must be reversed for proceedings consistent with this opinion.

Judgment reversed.