## Inter-Southern Life Insurance Company v. Omer.

(Decided May 12, 1931.)

792

WOODWARD, HAMILTON & HOBSON for appellant.

JOHN A. HUFFAKER for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming in part and Reversing in part.

On September 15, 1924, the appellant issued a policy of insurance for $1,000 on the life of James C. Omer in consideration of the payment of a semiannual premium of $15.84. This sum included $1.61 for a supplemental agreement to double the indemnity for accidental death and other benefits not involved in this case. Omer lost his life by accident on January 3, 1928, and his administrator has recovered a judgment for $2,000 on the contract. The policy contained the standard clause for its lapse or termination upon the nonpayment of premiums, subject to the nonforfeiture provisions. The case involves the effect of a note executed in lieu of payment of a premium and the question of liability under the extended insurance provisions of the policy.

The insured defaulted in the payment of the premiums due March 15, 1926, and September 15, 1926, but on December 23, 1926, he paid the former, and for the latter gave to the company what is denominated in insurance parlance a "blue note," dated September 15, 1926, and maturing January 27, 1927. With the exception of dates, amount, and name the note is identical with that copied in the opinion of Morgan v. Inter-Southern Life Insurance Co., 221 Ky. 582, 299 S. W. 186, 187, to which reference is made for its terms. The note was not paid at maturity, but about six weeks thereafter, on March 11th, the company accepted a payment of $5.19, and advised the insured that his note had been credited by that amount (35 cents interest), leaving a balance of $11 due on the note, "which has been extended to April 5, 1927, without otherwise altering the terms of the note." No further payment was made.

It will be observed that four semiannual premiums had been paid and $4.84 paid on the fifth one—credited on principal of the note. If the "blue note" is to be considered as the payment of his premium or the extended insurance allowed by the policy is to be computed from its maturity, it is conceded that Omer was insured at the time he met his death; but, if the extended insurance is to be counted from the date the premium for which it was given was payable, to wit, September 15, 1926, the "blue note" is eliminated from consideration, and he was not insured, unless upon a different theory, which is to be later considered.

The identical question was involved in the Morgan case, supra, and the court held that the extended insurance should be computed from the date of the maturity of the "blue note." A reconsideration of the construction to be given such an instrument in the same respect is urged upon us in this case. A controlling provision in the note is as follows: "That, if this note is not paid on or before the date it becomes due, it shall thereupon automatically cease to be a claim against the maker, and the company shall retain said cash as part compensation for the privileges granted herein and for keeping said insurance in force to the due date of this note; and all rights under said policy shall be the same as if said cash had not been paid nor this agreement made."

The reference to cash payment and the benefits obtained for its consideration are inapplicable, as there was no partial payment of the premium in cash, and the note was given for all of it. By the acceptance of the note, the lapsing of the policy was saved (which is a matter of materiality to an insurance company), and a promise to pay interest on the deferred premium secured. In consideration therefor the full liability under the contract was continued; whereas, if the note had not been accepted, there would have been a limited liability only.

The payment of the note was optional with the maker, and imposed no personal obligation on him. Atlantic Life Insurance Co. v. Bender, 146 Va. 312, 131 S. E. 806, 808. According to its terms, the note cannot be regarded as the payment of the premium or as an evidence of a subsisting obligation or as an acknowledgment on the part of the company that it regarded the insured as indebted to it.

The company could not have enforced its payment. It was simply a collateral agreement that the company would accept payment of the defaulted premium at a

later date if the insured should choose to pay it with interest, and that the insurance would be continued in force in the meantime. There was no waiver of the right to subsequently declare a forfeiture—to speak more accurately, a lapse—but only an agreement by the company to disregard the breach which had already occurred and to postpone the exercise of the right to treat the policy as having lapsed. Fidelity Mutual Life Ins. Co. v. Price, 117 Ky. 25, 77 S. W. 384, 25 Ky. Law Rep. 1148. The parties to the contract simply agreed that the execution of the note should breathe new life for the time being in the partially extinct and gradually expiring policy.

The purpose of the execution of the note was not to fix a new date for the start of the period of extended insurance. It but evidenced an accommodation or indulgence to the assured—a period of grace not contained in the policy—and was not intended to be in itself a payment or satisfaction. If the premium should not be paid, the legal effect was to restore conditions, or the relations between the parties, to the same status as if the instrument had not been executed, and to bring into effect the terms of the policy as to its lapse on default in payment of premium on the date due. Dreeben v. Mutual Life Insurance Co. (C. C. A.) 29 F. (2d) 963; Sims v. Jefferson Standard Life Insurance Co., 18 Ga. App. 347, 89 S. E. 445; Underwood v. Jefferson Standard Life Insurance Co., 177 N. C. 327, 98 S. E. 832; Sexton v. Insurance Co., 157 N. C. 142, 72 S. E. 863. These terms are that the policy should lapse and become null and void on nonpayment of the premium on the designated dates or within the period of grace allowed for such payment, "except as provided in the sections entitled 'Option on Surrender or Lapse' and 'Non-Forfeiture.' "

The instrument is radically different from one incurring absolute, or even conditional, liability on the maker, such as that considered in Inter-Southern Iife Ins. Co. v. Morrow, 227 Ky. 293, 12 S. W. (2d) 692. The many authorities dealing with a note of that character have no place in our considerations here. This note, as an inspection of that record shows, is like the one treated by the parties and the court in the Morrow case as having no bearing because it was past due and had not been paid.

Substantially the same form of note seems to be used by insurance companies generally, and its validity and

their right to extend the privileges granted by its execution have been recognized and upheld by other courts as not being violative of statutes against discrimination or the making of special inducements not specified in the policy. Diehl v. American Life Insurance Co., 204 Iowa, 706, 213 N. W. 753, 53 A. L. R. 1528. Compare Short's Adm'x v. Reserve Loan Life Insurance Co., 175 Ky. 554, 194 S .W. 773. There was no legal impediment to the making of the agreement by the parties, as is declared in the analogous case of Fidelity Mutual Life Insurance Co. v. Price, supra.

The question we have before us was decided by the Appellate Court of California in Eddie v. New York Life Insurance Co., 75 Cal. App. 199, 242 P. 501, 502. The court ruled that the extended insurance must be computed from the maturity of the premium and not from the maturity of the "blue note." It is said in the opinion:

"The legal effect of a note such as that executed on February 23, 1917, has frequently been before the courts of this country, and it has uniformly been held that such notes do not work an extension of the time when the extended insurance would automatically start after a lapse, but that such notes are merely accommodations to the insured, to be construed in accordance with their terms that, if the insured fails to pay within the time designated in the note, the policy shall be deemed to have lapsed at the time of the forfeiture. Underwood v. Jefferson Standard Life Insurance Co., 177 N. C. 327, 98 S. E. 832, 835; White v. New York Life Insurance Company, 200 Mass., 510, 513, 86 N. E. 928, 929, Robnett v. Cotton States Life Ins. Co., 148 Ark., 199, 230 S. W. 257, 259, 260; Bogue v. New York Life Ins. Co., 103 Neb. 568, 173 N. W. 591, 592."

See, also, Bank of Commerce v. New York Life Insurance Co., 125 Ga. 552, 54 S. E. 643. Compare Fidelity Mutual Ins. Co. v. Price, supra.

Construing the "blue note" as only the grant of an additional period of grace, the running of the period of extended insurance was concurrent with it. Such interpretation has been given with respect to the usual 30 days' grace, Missouri State Life Insurance Co. v. Carey

(Tex. Com. App.) 276 S. W. 227. But see 3 Couch on Insurance, sec. 634, showing the construction in this. regard may be dependent upon particular terms of the policies.

The appellee argues that the acceptance of the payment of the accrued interest and $4.84 on the principal of the note constituted a waiver and an estoppel to claim that it was not.to be regarded as a subsisting obligation. The acceptance was in accordance with the terms of the communication to the insured, that is, that it merely extended the rights granted by the "blue note" for an additional period, and we do not regard the act as having the effect suggested. The appellant argues that this payment is to be considered only as compensation for that extension. As indicated, reference in the body of the paper to the construction to be given to a payment in part of the matured premium in cash, the note being for the balance, is to be disregarded, for there was no such partial payment in the beginning. The partial payment of $5.19, credited on the note some time after it was extinguished, should be regarded simply as the acceptance of the payment of a part of the past-due premium and interest, reference to which will be later made.

The insured did not comply with the express terms of the note or avail himself of the extension to April 5, 1927. We are of the opinion, therefore, that the rights under the policy which he had and to which his beneficiary succeeded must be measured as if the note had never been given. Holly v. Metropolitan Life Insurance Co., 105 N. Y. 437, 11 N. E. 507; White v. New York Life Insurance Co., 200 Mass. 510, 86 N. E. 928. This. conclusion requires the overruling of so much of the opinion of Morgan v. Inter-Southern Life Insurance Co., supra, as holds that the computation of extended insurance should begin at the maturity of the "blue note" rather than the due date of the premium for which it was given. We may say, however, that the same result in that case would have been reached upon other grounds.

It follows as a consequence of the foregoing conclusion that the extended insurance should in this case be computed from September 15, 1926, unless regard be had for the partial payment.

By accepting the payment of $5.19 on March 11, 1927, the company waived the forfeiture for the nonpayment of premium due September 15, 1926, and elected to treat

the policy as restored and as a subsisting obligation after the default both in payment of premium and payment of the "blue note." The rule in such instances is fully treated in Equitable Life Assurance Society v. Brewer, 225 Ky. 472, 9 S. W. (2d) 206. See, also, Lantz v. Vermont Life Insurance Co., 139 Pa. 546, 21 A. 80, 10 L. R. A. 577, 23 Am. St. Rep. 202. The reinstatement continued in force the original policy, and did not create a new contract. Missouri State Life Ins. Co. v. Jensen, 139 Okl. 130, 281 P. 561; New York Life Ins. Co. v. Buchberg, 249 Mich. 317, 228 N. W. 770, 67 A. L. R. 1483. The retention of the partial payment of the entire premium estops it to deny its liability. Cooley on Insurance, 704, 930. An insurer cannot treat the contract as valid for the purpose of collecting premium and invalid for the purpose of indemnity. Kentucky Live Stock Insurance Co. v. Stout, 175 Ky. 343, 194 S. W. 318; Glens Falls Insurance Co. v. Elliott, 223 Ky. 205, 3 S. W. (2d) 219. It cannot, as stated in Ray v. Commonwealth Life Ins. Co., 184 Ky. 215, 211 S. W. 736, take a contrary position when subsequent events make it to its interest to do so.

The contract provides that the company would not accept payment of the premium in installments different from the annual sum, unless such change was made on an anniversary date of the policy and upon written notice. But it is well settled that an insurance company may have pursued a course of conduct or custom not within the express terms of its contract which may afford a basis for a reasonable excuse for the insured not paying the premiums at the time or in the manner stated in the policy. Halliday v. Equitable Life Assurance Society, 54 N. D. 466, 209 N. W. 965, 47 A. L. R. 446; 14 R. C. L. 1182; Ætna Life Insurance Co. v. Hartley, 67 S. W. 19, 68 S. W. 1081, 24 Ky. Law Rep. 57. Other than that made contemporaneously with the issuance of the policy, the company had accepted payment of every semiannual premium on a date later than the one stipulated. That due March 15, 1925, was accepted on April 15th; that due on September 15, 1925, for which a note maturing November 15th was given, was paid December 11, 1925; that due March 15, 1926, was accepted December 23, 1926, long after the policy had lapsed according to its terms. This course of dealing, coupled with the acceptance of a part payment of the premium long after delinquency, constituted a waiver of the conditions in the policy respect-

ing the time of the acceptance of the payment of premiums.

We do not, therefore, regard as applicable, the cases relied on by the appellant to the effect that an insurance company cannot be required to accept a payment less than the full premium and continue the policy in force. That is another question. The company here did accept it.

We have not overlooked the claim that this partial payment was in consideration of the privileges granted by the "blue note." Is it not inconsistent to say to the insured that for that payment a period of grace is granted you, but, unless you pay more, we shall consider that there has been no such period of grace, and that you defaulted in the payment of the premium as of its original due date? Either the policy must be deemed to have lapsed at the maturity of the note or end of the period of grace so bought, or else value must be given for the money received. There is no neutral ground of nonliability. The company vigorously denies the first conception. So it cannot escape the alternative.

The company received and retained the insured's money, and he or his beneficiary was entitled to receive some value for it. A settlement must be made. A cash refund could not be demanded. It was paid and received for insurance coverage, and settlement must be made in insurance. As to just what or how much that insurance is presents something of a problem.

The policy provides—in consonance with insurance economics—that "the insurance hereunder is based upon an annual premium payable in advance." The stipulated annual premium for the principal insurance is $27.35, the semiannual premium $14.23, and the quarter annual premium $7.26. For the supplementary insurance the sums are $3.09, $1.61, and $.82, respectively. The larger proportionate fractional year premiums take care of interest on the deferred portions of the annual payment. Technically speaking, the whole year's premium is regarded as paid, and the company is considered as making a loan of the unpaid portion. When the insured dies while that deferred part remains unpaid, the amount is deducted from the proceeds of the policy. In the contract involved here, it is stipulated: "If death occurs within the days of grace or during the period covered by any installment, if the premium is payable in install-

ments, any unpaid premium or installment thereof for the then current policy year shall be deducted from the amount payable hereunder.'' Had this payment been $7.26, the stipulated quarterly premium, instead of $5.19, undoubtedly such theory would apply and such construction be given, and the entire premium due September 15, 1926, would be regarded as paid. Query: Under the familiar doctrine as to construing insurance contracts favorable to the insured, since the insurer accepted less than a semiannual or quarter annual premium, to wit: about one-sixth—and that loaded with interest—should not the same rule be applied? Compare Prudential Insurance Co. v. Chestnut, 9 Ga. App. 781, 72 S. E. 170. An answer to the query is not here required, however, for upon a basis less burdensome in principle it will be found that the appellant is liable for the main policy.

The least the insured could be expected to demand was the benefits of the policy for a period proportionate to the fraction of the premium paid—pro tanto coverage for a pro rata payment. On March 11, 1927, he paid the company interest on the full semiannual premium (which should have been satisfied on September 15, 1926) to January 27, 1927, and $4.84 on the premium. That is the sum with which we must deal.

In 3 Couch on Insurance, sec. 631, it is stated that as a general rule part payment of a premium will not prevent a forfeiture. But the text continues: ''The general rule is subject, however, to such exceptions as may arise by some agreement whereby the policy may be kept in force by part payment, or where there is a waiver, for even the acceptance of a promise to pay the premium, without actual payment of any part thereof, is sufficient, as where credit is given or a check is accepted. So, a receipt of part of the premium after forfeiture has been held to constitute a waiver. And where small partial payments were made from time to time until insured's death, when only a very small fractional amount remained unpaid, that contract was held not to be forfeited.''

There are many authorities declaring it to be the duty of an insurance company to appropriate funds in its hands which are sufficient to satisfy a quarterly or semiannual premium to that purpose and prevent a forfeiture. Citizens' Life Ins. Co. v. Boyle, 139 Ky. 1, 129 S. W. 303. See annotations, 6 A. L. R. 1400.

We find only a domestic case and one other (and that rested upon it) directly in point as to the application to be made of a smaller portion of a premium accepted and retained by the company.

In Ætna Life Insurance Co. v. Hartley, 67 S. W. 19, 21, 68 S. W. 1081, 24 Ky. Law Rep. 57, the insured defaulted in payment of a premium of $128.40 due March 10th. On the 19th, the company advised him his past-due premium had been reduced by $5.65, the amount of dividend earned by the policy. Nothing more had been paid on the premium when he died on March 25th. The conclusion of the court is thus expressed:

"Therefore we conclude the insurance company owed the insured on the 10th day of March the sum of $5.65. This sum the insurer could have paid direct to the insured; or, if it chose to do so, it might credit it upon his premium that day due. It had elected to credit it upon the premium, and while, undoubtedly, it could not have been compelled to have accepted less than the full annual premium in order to continue the policy in force, and while it could not have been compelled to have applied this dividend upon the premium, yet, having elected to do so, and having actually done so, as is shown by its letter to the assured dated the 19th day of March, we conclude that it could not, during the time that that sum paid the premium on the policy, declare it to be forfeited for non-payment of premium. Five dollars and sixty-five cents overpaid by a few cents the premium upon this policy from the 10th of March to the 25th. We conclude that the insured was not in default at the time of his death. May, Ins. 345a."

In Halliday v. Equitable Life Assurance Society, 54 N. D. 466, 209 N. W. 965, 47 A. L. R. 446 (which relied on the Hartley case as authority), it was held, where it had been the custom of the company to apply dividends as credits on premiums, that it could not declare the policy forfeited for non-payment of premium during the time that the amount of the dividend was sufficient to pay the premium; the custom being regarded as an election to do so. The opinion directed attention to the distinction to be drawn between the Hartley case and those cases where the insurer simply held a sum less than the stip-

ulated premium, e. g., a dividend, and had not made an election, actual or constructive, to apply the amount on a premium obligation.

In the policy before us, the stipulated annual premium was $27.35 for the principal policy and $3.09 for the supplemental contract for double indemnity in case of accidental death and disability benefits. On the basis of $30.44 premium for 12 months, the $4.84 partial payment proportionately carried the policy 58 days, or to November 13, 1926. That date must be considered the time at which the policy lapsed for nonpayment of premiums, subject to its nonforfeiture provisions. There was then a commutation into term insurance for an extended period.

In modern life insurance business the persons insured in effect insure one another of the same class. A portion of the premiums paid is used to establish a reserve fund for the satisfaction and payment of the policies. Each policyholder has a property right in that reserve. For a treatise on the relationship of an insurance company and its policyholders, and an elucidation of the doctrine of their participation in its reserve and profits or surplus, its origin, development, and theory or rationale, reference is made to United States Life Insurance Co. v. Spinks, 126 Ky. 405, 96 S. W. 889, 103 S. W. 335, 29 Ky. Law Rep. 960, 31 Ky. Law Rep. 185, 13 L. R. A. (N. S.) 1053. The recognition of the policyholder's interest in the reserve, that is, the portion which has been allotted to his policy, is demanded and its forfeiture or confiscation prohibited by statutes enacted by most if not all the states under the police powers of government. See section 659, Kentucky Statutes. Those statutes must be regarded as entering into and forming a part of the policy to the same effect as if embodied therein. Peak v. Mutual Benefit Life Insurance Co., 172 Ky. 245, 189 S. W. 195; Prudential Insurance Co. v. Ragan, 184 Ky. 359, 212 S. W. 123, certiorari denied 250 U. S. 668, 40 S. Ct. 14, 63 L. Ed. 1198.

The net value of the interest of the holder of any policy of insurance in the reserve set aside for the payment of his policy and others of the same class is determined by the amount of money he has paid in as premiums. It is capable of ascertainment in dollars and cents. When so ascertained, the sum is treated as the payment of a single premium for the purchase of insurance of a

definite amount payable at the death of the policyholder —a paid-up policy—or for the purchase of insurance for the full amount of the policy for a limited time—extended insurance. A discussion of the economics and the method of calculation will be found in United States Life Insurance Co. v. Spinks, supra; Jefferson v. New York Life Insurance Co., 151 Ky. 609, 152 S. W. 780; Maddox v. Mutual Life Ins. Co., 193 Ky. 38, 234 S. W. 949, 22 A. L. R. 1276; and Orange's Ex'rs v. Mutual Benefit Ins. Co., 199 Ky. 429, 251 S. W. 204.

The policy involved gives recognition to the statutory demands and the rights of the insured in the reserve. The option is given to choose "paid-up insurance" or "extended insurance," and a table is published showing the value and extent of those respective rights. It is provided that, upon failure to exercise the option upon default in the payment of premium, extended insurance would be granted according to the table published in the policy. That is no gratuity personal to the insured but a vested property right which upon his death survives to his beneficiary. No demand was necessary. New York Life Insurance Co. v. Van Meter, 137 Ky. 4, 121 S. W. 438, 136 Am. St. Rep. 282; Mutual Benefit Life Insurance Co. v. Harvey, 117 Ky. 834, 79 S. W. 218, 25 Ky. Law Rep. 1992, 111 Am. St. Rep. 269; National Life Insurance Co. v. Kuykendoll, 206 Ky. 361, 267 S. W. 140.

The published table shows that, after payment of two annual premiums, the insured was entitled to extended insurance for 363 days, and after payment of three annual premiums to extended insurance for 3 years and 56 days. There is also this stipulation in the policy in connection with that table: "If the premium on this policy be paid in installments allowance will be made in computing benefits for that portion of the premium paid over and above the number of years indicated in the table."

The appellant conceeds that the insured was entitled to extended insurance of 363 days computed from September 15, 1926; but that would not carry the policy to the date of his death. It ignores the partial payment of $4.84 on the third year's premium, or rather claims it was for another consideration, as we have indicated. We have already stated our conclusion that the insured was, and his beneficiary is, entitled to the proportional benefits which it purchased. And, as shown, in comput-

ing the reserve or determining the net value of the policy, the premiums paid are taken as the basis of calculation. The company, quite appropriately, has here recognized that installment payments on the premiums must be taken into consideration.

In Clark v. New York Life Insurance Co., 101 S. C. 258, 85 S. E. 594, and First Texas Prudential Insurance Co. v. Sorley (Tex. Civ. App.) 272 S. W. 346, the policy tables provided for extended insurance on a yearly basis, as does that we have here. But it does not appear that either policy contained any express provision that consideration would be given to an installment payment. In the Clark Case the insured had paid two quarterly payments and defaulted on the third one. The policy was not affected by any statute, but the court construed the agreement for the acceptance of quarterly payment of premiums in connection with the policy so as to sustain the contention that the assured was entitled to extended insurance, not only for the amount promised in the table upon payment of two annual premiums, but for the additional time purchased by the two quarterly premiums which he had paid. In the Sorley Case there was a statute similar to ours requiring that the reserve or net value should be calculated "at date of default of premiums." The insured had paid three quarterly premiums, and the same conclusion was reached and declared. See, also, Taylor v. New York Life Insurance Co., 209 N. Y. 29, 102 N. E. 524.

It is clear that the insured was entitled to the extended insurance which inured to him by virtue of the payment of $4.84 on the third year's premium. Had he paid the full annual premium on the main policy—$27.35 —he would have been entitled to 1,151 days extended insurance, or 788 days more than he was by reason of having paid 2 years' premiums. If the payment of $27.35 entiled him to 788 days, the payment of $4.84 entitled him proportionately to 140 days. Adding this to the 363 days conceded him, his policy extended 1 year, 4 months, and 17 days. Computing this from the date which we have ascertained his entire contract of insurance was carried, viz.: November 13, 1926, the term did not expire April 1, 1928, practically 3 months beyond his death.

Perhaps if the calculation should be made by the intricate mathematical processes and with the precision

of an actuary upon the basis which the policy declares its table is computed, some little difference would appear. But the company is bound by its published table (Cabell v. Mutual Benefit Life Insurance Co., 157 Ky. 752, 163 S. W. 1119), and it is not improper to consider its stipulation as to the additional period to which the third annual payment entitled the insured as the basis of a simple calculation in proportion to ascertain what bene: fits a part of that annual premium acquired.

The foregoing conclusion makes it unnecessary to consider the opposing contentions of the parties regarding the application of certain dividend coupons to the payment of the premiums.

We have referred to the denominated ''Supplementary Contract'' providing for certain benefits additional to those granted by the principal policy. It is stipulated in the record that the insured, Omer, ''was instantly killed by accident on January 3, 1928.'' If the supplementary contract was in effect at that time, the beneficiary is entitled to double the indemnity named in the policy, that is, to $2,000.

Separate benefits for the $3.09 additional annual premium were granted. The conditions upon which that liability depended are thus expressed:

''In event of the accidental death of the insured, the Company agrees to pay double the face amount of this policy, if during the premium paying period, and before default in the payment of any premium, and before waiver of any premium on account of disability and before any non-forfeiture provision is in effect and before the Insured is sixty years of age.''

Another pertinent clause is as follows:

''These benefits shall cease to be in force when any premiums provided for in the Policy or this supplementary contract, shall not be paid when due; while any non-forfeiture provision in the Policy is in effect, or when premiums on said Policy shall cease to be payable in accordance with its terms, or when any premium for these benefits, shall not be paid when due.''

We have already determined that at the latest the policy lapsed November 13, 1926; subject to the nonfor-

feiture provisions; that is, the right to extended insurance. These provisions are expressly excluded from this supplementary agreement, which is, in its essence, an accident policy. The statute requiring recognition of an insured's rights to the net value of a lapsed policy has no application to accident insurance of this character. The terms of the contract with respect to this double indemnity are clear and unambiguous, are not contrary to any rule of law or public policy, and must be given effect. Inter-Ocean Casualty Co. v. Dunn, 219 Ky. 103, 292 S. W. 742. When the policy lapsed for nonpayment of the premium, the rights acquired by the insured under this supplementary agreement terminated. The appellee, therefore, is not entitled to a judgment for its benefits.

The judgment is affirmed to the extent that it allows a recovery for $1,000 under the principal policy, and is reversed in so far as it awards double indemnity under the supplementary contract.

Whole court sitting.